## CHARLES WHEELER v. STATE.

No. A-3591—Opinion Filed Jan. 7, 1921.

(194 Pac. 455.)

(Syllabus.)

**HOMICIDE—Case Followed.** The syllabus in this case is the same as in the case of **Hilario Valdez, alias John Lee, and Peter Crus,** 18 Okla. Cr. 204, 194 Pac. 451, No. A-3590, decided at the present sitting of the court.

*Appeal from District Court, Pittsburg County;*

*R. W. Higgins, Judge.*

Charles Wheeler was convicted of murder, and he appeals. Affirmed.

*Sewell & Eylar,* for plaintiff in error.

ARMSTRONG, J.   The plaintiff in error, Charles Wheeler, hereinafter called defendant, was jointly informed against together with Hilario Valdez and Peter Crus for the murder of Crecencio Salinaz, and upon the said defendants being arraigned, the said defendant, Charles Wheeler, asked for and was granted a severance, tried separately, and convicted, and sentenced to the penitentiary for life.   To reverse the judgment rendered he prosecutes this appeal.

This is a branch of the case of *Hilario Valdez, alias John Lee,* and *Peter Crus v. State,* No. A—3590, 18 Okla. Cr. 204, 194 Pac. 451, affirmed by this court, and is submitted upon the record and no briefs filed.   The evidence

is very voluminous, and the witnesses, and the evidence of the state are identical in each case, and hence we deem it unnecessary to repeat said evidence, and refer to opinion in said case No. A—3590, *Hilario Valdez, alias John Lee,* and *Peter Crus v. State,* for said evidence.

At the conclusion of the evidence for the state, the defendants demurred thereto, in effect a request for an instructed verdict. The court overruled said demurrer, and defendant excepted. The only witness, introduced in the trial of the case by defendant, other than the defendant himself, was J. A. Johnson, who testified as follows: That the state's witness, Mary Ingolg, testified before the coroner's jury, that she did not remember whether or not the negro's name was mentioned by any of the witnesses; that possibly the negro's name was mentioned and possibly not; that she did not know, but at that time there was a negro in the jail at Hartshorn, and it possibly could have been that a negro's name was mentioned; that she would not be sure about it; that Romulo Savalla testified at said inquest, but that she did not know whether he said anything about the negro or not; that she did not remember.

Charles Wheeler, the defendant, testified in his own behalf: That he was raised in Virginia; had been in this country about 18 years; that he had been around Dow and Hartshorn about 14 years; that he had not been there since, except the night they claimed the trouble was; that he was at Hartshorn that night, and it was the first time he had been back to this part of the country for 14 years, during which time he had been in Arkansas, working as a coal miner; was at Huntington and different places, around Midland and Calhoun, Okla., that, at the

time this Mexican was killed, defendant's home was in Huntington, Ark.; that work shut down where he was working, and he came to Hartshorne on the blind, and he had a few dollars, $4 or $4.50 or $5, and that when he got to Hartshorn he got off on the blind side, the side opposite the depot, trying to dodge the law, for he did not pay his way; that when he got off he tried to find a girl around there named Rachael, and inquired around; that she had a mother-in-law who lived in Huntington; that "she was a little child, 5 or 6 years old, I guess"; that he promised her mother-in-law that he would try to find her and see how she was getting along, but that he did not find her; that when he got off the train he intended to go to Dow; that it looked like the road, and everything was turned around, and he got "plumb lost"; that he had on quite a few clothes, and that he walked until he did not know where he was; that he did not know where the officers arrested him; that he could not go there; that he did not see any Mexicans at Hartshorn that night; that he did not go to the depot, and that when the officers arrested him he had, besides these shoes and a knife, a carbide lamp in his pocket, and a piece of sandpaper; that he bought the shoes from a fellow; that he could not tell anything about who he was, and that after the man passed he whistled and turned around, heard some talk, but did not see but one man, who came up and told him he had some shoes he wanted to sell; that this was about an hour before he was arrested; that he gave $2.50 for the shoes; that the fellow asked him if he wanted to buy the shoes, saying he was broke and wanted a feed; that he spoke some kind of a broken language, did not know whether he was a Mexican or not; it was dark and he could not see good; that he was too bright for an ordinary negro,

brighter than he was; that he got the knife from him also; that when he was arrested he told the officer he had gotten the shoes and knife since he had been in Hartshorn, and that he bought them from a fellow in Hartshorn; that he did not know where he had been walking, but he had been walking mighty near all night; that the officers took him, and put him in the holdover, and kept him all night; that it was about 3:30 when they took him up; that when the officers took him up they asked him if he had been somewhere that night with two Mexicans, where a man had been killed, and he told them, "No; he didn't know anything at all about it;" that the first time he knew a man had been killed was when told by the officers; that they turned him out about 3 in the evening of the next day; that when he was let out of jail he went to Dow, and from there to Pocahontas and other places, but he did not know anything at all about their being after him; that after his first arrest he was down about a month at Wilburton at work, and left there, and went to Arkansas; that he had a lady friend he left there very sick; that he was last arrested at Huntington, Ark.; that he could not wear the shoes he bought; that he had a stepson about 14 years old, and that he bought them, thinking to help him; that he knew the two Mexican boys they have charged with the killing, but he did not know them before he was arrested and put in jail with them; never kept company with Mexicans; could not speak their language; that he did not know which one of the officers told him that a man had been killed; that there were four or five of them together, talking to him; that he did not go to the cement plant with these Mexicans, or anybody else, and try to rob the house; that he did not know anything about it at all.

On cross-examination he testified that he did not see anybody he knew on the night he was first arrested; that it must have been 11 or 12 o'clock when he got to Hartshorn; that he did not know exactly what time it was; that he spent the time after his arrival wandering about the town of Hartshorn until his arrest, just tramping around; that when he got off the train he was wearing a cap; did not have a hat with him; that he did not know what the size of the shoes were when he bought them; that he could see enough to know they were worth $2.50; that he would not swear positively that he had never seen Peter Crus; that he may have seen him in Arkansas, but did not pay any attention to Mexicans; that he went back to Huntington about a month after his arrest. He denied telling Masters and Ledbetter that he bought the shoes of a man over towards Arkansas, and also denied telling the officers that he bought the shoes from a man over near the town of Hartshorn; that he never told anyone he would take them to the place he bought the shoes; that he had about $2 when arrested; that he spent it; that he did not tell the officers he was broke; that the officer put his hand in his pocket and got what change he had; that he told the officers that he rode the "blind"; that he did not know how near the town of Hartshorn he was; that he was as innocent of the charge against him as one of the jurors over there; that he was a coal miner.

In response to a question by one of the jurors he testified that he was never at the house where this woman lived that he wanted to see; that he knew her mother-in-law; that she had a little child down there, and that he promised them he would go and see the girl, and tell

her how they were getting along; that when he bought the shoes he did not know the man he bought them of; that he was lost. On the coming in of the verdict, defendant moved for a new trial, which motion was overruled and exceptions saved.

There is in effect but one alleged error in this case: That the evidence is insufficient to support the verdict. The defendant being a joint defendant in the case of *Hilario Valdez, alias John Lee,* and *Peter Crus v. State* (No. A—3590), 18 Okla. Cr. 204, 194 Pac. 451, but who upon a severance was separately tried, and the witness for the state and the evidence in each of said cases being identical, we are of the opinion that the evidence in this case for the state, as set out herein and supplemented by the state's evidence in the opinion in the case of *Valdez, alias Lee,* and *Crus v. State* (No. A—3590) decided at this sitting of the court, is sufficient to support the verdict in this case, and upon the reasoning and authorities cited in the opinion in the latter case this case is affirmed.

DOYLE, P. J., and MATSON, J., concur.