THE STATE OF IOWA, Appellee, v. SAM ROAN, Appellant.

Murder:  EVIDENCE.  In a prosecution for murder, the evidence is considered and held sufficient to support a verdict for murder in the seecond degree.

Drunkenness as a Defense.  Drunkenness is neither a defense nor excuse for crime, but may be shown to negative felonious intent or to reduce the degree of the crime, wherever motive or intent are material.

Deadly Weapon.  A weapon used in such a manner as likely to produce death, is a deadly weapon.

Ejection:  AID OF BYSTANDER.  One may call to his aid a bystander to eject another person from his house.

Sentence:  PRESUMPTION AS TO TIME OF.  In the absence of a showing to the contrary, it will be presumed that sentence was not imposed within three days from the return of the verdict.

*Appeal from Polk District Court.*—HON. A. W. WILKINSON, Judge.

THURSDAY, JANUARY 14, 1904.

DEFENDANT was indicted for the crime of murder in the first degree. He was convicted of murder of the second degree, and sentenced to the penitentiary for the term of thirty years. From the verdict and judgment defendant appeals. — *Affirmed.*

*J. F. Conrad* and *J. B. Rush* for appellant.

*Chas. W. Mullan*, Attorney General, and *Chas. A. Van Vleck*, Assistant Attorney General, for the State.

DEEMER, C. J.—Defendant and another man, by the name of Linn, went to the house of a Mrs. Kilbain, in the city of Des Moines, at which place Linn had a room.

**1. EVIDENCE.**     After drinking a small amount of liquor with Linn, defendant stated that he thought he should go home, to which Linn responded that he (defendant) might go up to his room and stay as long he liked. Defendant did not accept the invitation, but shortly thereafter laid down upon the floor of the room which he had entered, and went to sleep. In the meantime Linn had left the house. Upon his return he engaged in a scuffle with the defendant, in which, according to the evidence, Linn was the aggressor, which resulted in Linn's getting him by the arms and pinioning him to the floor. Defendant then said that if Linn would let him up he would "quit and call it square." Linn released him, passed from the room into the hall of the house, and from there out onto the porch, where he stood for a few minutes, either resting against one of the porch columns or standing near the outer edge of porch. The evidence tends to show that while he was in this position the defendant slipped out of the room where he had had the scuffle, "tiptoed" his way onto the porch, and, seeing Linn, struck him a severe blow at the base and back of the head behind the ear, knocking him off the porch and onto and across the side-

walk, which was a short distance from the porch, and rendering him unconscious. Defendant followed him into the street, jumped upon his prostrate form, kicked him in the face, and finally reaching into his pocket, drew a knife therefrom, and plunged it into the body of Linn several times, from the effects of which Linn died in a very few minutes,—one of the wounds having reached his heart. Defendant then went to a nearby dwelling house, washed his hands, and was there apprehended by the city officials. Defendant declared, as he opened his knife, that he would "fix" the deceased so that he would never catch him again.

The first claim made on the appeal is that the verdict is not supported by the evidence. The statement which we have made, gathered from testimony which the jury had the right to believe, is a sufficient answer to this contention. The case as thus stated does not disclose any justification or excuse for the homicide.

II. Complaint is made of the court's refusal to give certain instructions asked by the defendant. We shall not set all of them out, as no good purpose would be sub-

2. DRUNKEN-NESS as a defense. served thereby. The instructions given by the court on its own motion fully covered the propositions advanced by those requested, in so far as they embodied correct rules of law. The third request read in this wise: "In considering whether or not the defendant acted in self-defense, the question for you to determine is whether or not he had reason to believe, and did believe, that he was in danger of his life or of great bodily injury, and in determining that fact it is proper for you to take into consideration the fact, if you find it to be a fact, that the defendant was intoxicated at the time, and that a man in an intoxicated condition is likely to believe himself to be in danger for reasons that might not be considered sufficient to create a similar belief in the mind of a sober man." This was manifestly incorrect. Drunkenness does not constitute a defense, nor is it an

excuse for crime. Such condition may be shown to nega-tive felonious intent when that it material, or for the pur-pose of reducing the degree of an offense involving motive or intent, but it is not generally an excuse for the overt act. This is familiar doctrine. It is stated with great clearness in *Buckhannon v. Com.*, 86 Ky. 110 (5 S. W. Rep. 358). See, also, McClain, Criminal Law, section 162. There was no error in refusing the instructions asked.

III.   The trial court gave the usual instructions with reference to deadly weapons, and as to the presumption arising from the use thereof in a deadly manner. It is 3. DEADLY insisted that an ordinary penknife is not a weapon. deadly weapon, and that the court was in error in giving this portion of its charge. Manifestly this is unsound. A penknife may or may not be a deadly weapon. If the weapon is such that from the manner of its use it is likely to produce death, it is, of course, a deadly weapon. That it was so used in this case there can be no doubt.

The twenty-fourth instruction reads as follows: "If the defendant and said George Linn were in the house of one Lizzie Kilbain, and she wanted the defendant to leave 4. EJECTION: her house, she had the right to order him out aid of by-stander. of the house, and if he failed to go she would have the right to use sufficient force to put him out of her house, and in case of such refusal she would have the right to ask the said George Linn to put him out, and he would have the right, without unnecessary injury to the defendant, to put him out of said house, and in such case defendant would not have the right to resist any proper force applied to him for that purpose; and if the conflict was brought about by the attempt to expel defendant from the house of said Lizzie Kilbain, at her request, the de-fendant would not have the right to resort to the use of a dangerous weapon, or the right to use it in a dangerous manner, unless it reasonably appeared to the defendant

to be necessary to protect him from receiving great bodily harm, and unless it further appeared to be the only means at hand to save his life or prevent great bodily injury at the hands of the said George Linn." This is challenged because it is said that one may not call to his aid by-standers to eject another from his house. This contention is without merit. *People v. Adams*, 52 Mich. 105 (17 N. W. Rep. 715); *State v. Lockwood*, 1 Pennewells Repts. (Del.) 76 (39 Atl. Rep. 589.) Moreover, it is claimed that there is no testimony showing or tending to show that Mrs. Kilbain ordered him from the house. It must be confessed that there is some confusion here. But it is apparent that some one awakened the defendant from his slumber and ordered him to "get up and get out." Who this some one was is not shown. There were but two persons present, however—Mrs. Kilbain and George Linn—so that it must have been one or the other of them. Whichever it may have been, as it was done with the knowledge and acquiescence of Mrs. Kilbain, we think the court was right in giving the instruction. It does not assume that Mrs. Kilbain ordered defendant out, but gives the jury a rule to follow in the event they found that she did so.

IV. Lastly, it is insisted that the court sentenced the defendant prematurely. This is based upon section 5431 of the Code, which provides in substance, that at least

5. SENTENCE: presumption as to time of. three days must elapse between the return of the verdict and the sentence, provided the court stays in session that long. It is not shown how long the court remained in session, and in the absence of such showing we should not presume error. *State v. Wood*, 17 Iowa, 18; *State v. Turney*, 77 Iowa, 269. Moreover, it is shown that the day for sentence was fixed by an agreement of all parties.

There is no error in the record, and the judgment is AFFIRMED.