### JOE TAYLOR v. STATE.

No. A-3712.   Opinion Filed Feb. 6, 1922.
(203 Pac. 1049.)

(Syllabus.)

**Appeal and Error—Conviction Based on Evidence.** Even where much of the evidence is circumstantial, if there is substantial evidence which if believed by the jury would preclude every reasonable hypothesis of the innocence of the accused, a verdict of guilty will not be disturbed.

Under such circumstances the weight of the testimony is a question of fact for the jury, and is not a question of law for determination by this court.

Appeal from District Court, Coal County; J. H. Linebaugh, Judge.

Joe Taylor was convicted of murder and sentenced to life imprisonment in the state penitentiary, and he appeals. Affirmed.

C. M. Threadgill, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty Gen., for the State.

BESSEY, J.  Joe Taylor, plaintiff in error, in this opinion referred to as the defendant, was by information filed in the district court of Coal county, January 6, 1919, charged with the murder of Antonio Rodriguez on the 13th day of December, 1918.  At the trial, on October 2, 1919, by verdict of the jury he was found guilty as charged, and his punishment assessed at life imprisonment.  After hearing of a motion for a new trial, which was overruled, the defendant appealed from the judgment on the verdict.

The evidence on the part of the state was to the effect that the deceased, Antonio Rodriguez, commonly called Tony, was a Mexican, upwards of 50 years of age, who lived by himself in a four-roomed house in East Lehigh, Coal county, Okla., where he kept a gambling resort and sold Choctaw beer and possibly other intoxicating liquors; that he owned a gray horse, and did common labor and odd jobs for others.  The evidence also disclosed that the defendant had been convicted of statutory rape and been pardoned, and had been accused of other crimes; that until the Wednesday preceding the tragedy he had occupied a house just across the street from the premises of the deceased, where he kept bachelor quarters alone; that on Sunday morning, December 15, 1918, Tony was found dead in his house, with wounds on his head and face and a fractured skull. Near the body was a broken, bloody beer bottle and a bloody stone about the size of a man's fist.  An old black overcoat, torn in one or two places, and a bloody, torn dress shirt, were also found near the body.  This coat had blood marks at the throat, on the sleevs, on the right side of the breast, on the back, and in the lining.  There was a disar-

ranged bed in the room where the body was found, a pair of shoes was sitting under the bed, and there was blood on the pillows, mattress, and covers. The doors of the house were latched and locked on the inside, a wire screen was off of a window of the room where the body was found, and the window was partly open. The weather was cold, and the blood on the floor and on the clothing was coagulated.

There was evidence that the defendant had been seen at the home of the deceased on the Friday preceding the finding of the body. Two witnesses on the part of the state identified the overcoat found near the body as belonging to the defendant; a number of other witnesses stated that the overcoat resembled one belonging to or worn by the defendant, but would not state positively that the coat in question, which was shown as an exhibit in court, was the coat worn by the defendant. There was some evidence tending to show that the motive for the killing was robbery, and that the defendant had lost money in gambling games at the place of the deceased, and that the deceased was known to have received money a day or two before the tragedy.

The testimony on the part of the defendant was to the effect that he was not the owner of the overcoat in question, and that prior to the tragedy he had moved to a little town called Midway, about eight miles distant and had remained there Thursday, Friday and Saturday preceding the finding of the body of the deceased.

There is but one assignment of error argued in the briefs, namely, that the testimony connecting the defendant with the homicide was circumstantial, and was insufficient to support the verdict. The defendant in his brief states the rule as follows:

"In a criminal case circumstantial evidence, to justify the inference of guilt, must exclude to a moral certainty every

other reasonable hypothesis. Circumstantial evidence in a criminal case is of no value if the circumstances are consistent with either the hypothesis of innocence or the hypothesis of guilt, nor is it enough that the hypothesis of guilt will account for all the facts proven.''

In instruction No. 5 the court instructed the jury as follows:

''You are instructed that circumstantial evidence is legal and competent evidence in criminal cases, but the facts and circumstances must be consistent with the guilt of the defendant, and inconsistent with his innocence, and must exclude every reasonable hypothesis except that the defendant is guilty; and if the facts and circumstances in this case are of such a character as to convince you beyond a reasonable doubt that the defendant is guilty, it would be your duty to convict; but, if upon the consideration of all the evidence in this case, you should entertain a reasonable doubt of his guilt, it would be your duty to acquit him.''

Upon the question of an alibi the court gave instruction No. 10, as follows:

''In this case the defendant has interposed as one of his defenses what is known in law as an alibi; that is, that the defendant was at another and different place at the time of the commission of the crime. The law is that such defense is proper and legitimate, and that the jury should consider all the evidence bearing upon this point, and that if, after a careful consideration of all the evidence in the case, the jury should entertain a reasonable doubt as to whether the defendant was in such other place when the crime was committed, then, in that event, the jury should give the defendant the benefit of such doubt and acquit him.''

The question here confronting us is not whether upon a consideration of the testimony, as shown by this record, this court would arrive at the same conclusion as was reached by the trial court. Taking it for granted as a fact proved be-

yond a reasonable doubt that the overcoat found near the body of the deceased belonged to the defendant, the evidence was sufficient to warrant the jury in finding a verdict of guilty. The jury were better able to determine than we, and it was within their province to determine, whether or not the overcoat was the property of the defendant. True, the evidence in many particulars was circumstantial and in a number of instances conflicting, but it is for the jury to determine the weight and sufficiency of the evidence; and, unless it affirmatively appears from the record, as a matter of law, that the evidence is insufficient to support a verdict, a verdict of guilty will not be disturbed.

The court fairly instructed the jury upon the law of circumstantial evidence, and the jury must have found beyond a reasonable doubt that the overcoat in controversy was the property of the defendant, which fact, taken together with all the other circumstances in the case, convinced the jury that the defendant was guilty.

The judgment of the trial court is therefore affirmed.

DOYLE, P. J., concurs.

MATSON, J., not participating.