## ELNORA MARY GATEWOOD v. STATE.

No. A-10401. March 28, 1945.
(157 P. 2d 473.)

Harold McArthur, of Tulsa, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for defendant in error.

BAREFOOT, P. J. Defendant, Elnora Mary Gatewood, was charged in the district court of Tulsa county with the crime of murder, was tried, convicted and sentenced to serve a term of life imprisonment in the State Penitentiary, and has appealed.

Defendant sets forth the following assignments of error:

"I. The court erred in overruling the demurrer to the evidence of the State of Oklahoma and submitting the case to the jury on murder.

"II. Court erred in excluding offered evidence of specific acts of violence committed by adversary and any person aiding adversary where self defense is interposed.

"III. Improper argument of the prosecution which may have influenced the verdict of the jury is prejudicial error."

Defendant, Elnora Mary Gatewood, was charged with the murder of Lillie Wren in the city of Tulsa on June 5, 1942. Both defendant and deceased were negro women.

Defendant was married to Roosevelt Gatewood, but they were living separate and apart at the time of the homicide, and he was living with Lillie Wren. There had been continuous trouble between defendant and deceased by reason of the conduct of Roosevelt. He lived with first one and then the other of the women. On the evening of June 5th, defendant had gone to the neighborhood where her husband and deceased were living. Soon after she arrived, Roosevelt Gatewood and deceased drove up in front of the gate in his truck. An argument immediately ensued between defendant and deceased. Both occupants of the truck got out. A fight started between defendant and deceased, which awakened the neighbors, and some of them came to the scene. In the fight, defendant cut and stabbed deceased in six different places, and from the effect of these stabs and cuts she died.

Robert Burns, a neighbor, testified that he was awakened by the fight and went to the scene of the difficulty, and saw them fighting; he heard Roosevelt Gatewood tell the defendant, "Don't cut that woman," but that she kept cutting her, and that after her husband

had separated them, he told her, "You have done cut that woman;" and that defendant replied, "Yes, that's what I intended to do; I have been trying to catch her for a long time." Deceased stood by the truck for a few moments, the blood gushing from her wounds, and she fell to the ground. She was later taken away in an ambulance. The defendant left the scene of the difficulty, and telephoned the officers to come and get her, but they did not locate her until the next morning, when she learned that Lillie Wren had died, and again telephoned the officers and Deputy Sheriff Roy Raines arrested her. The defendant at that time gave the officer a pocketknife, which was introduced in evidence. Roy Raines testified:

"She told me that she had killed a girl, and I asked her who, and she said it was Lillie Wren. WHY? And they were having trouble over the defendant's husband, or she was running around with defendant's husband. And she gave me that knife, and said that was the knife she used in the fight. It had blood on it—still had some blood on it the next morning."

Doctor W. N. Coots testified that he examined deceased about 10:15 on the night of the killing. That deceased had "multiple" cuts on her body and that she was dead at the time he examined her, as the result of said cuts and stabs.

Other officers testified to examining the premises and finding pools of blood, and of not finding any knife or weapon of any kind at the scene of the difficulty.

Defendant testified and admitted the cutting and stabbing of deceased, but said that her husband and the deceased jumped out of the truck and grabbed her, and beat her, and that she only used the knife in self-defense. On cross-examination she admitted that she had served

a term of five years in the State Penitentiary for burglary; served 60 days in jail for violation of the National Prohibition Law on three different counts, running concurrently; served one year in the penitentiary for shooting Neecie Love; had served one year in the penitentiary for shooting Pearl Miller, and that she had shot her husband, Roosevelt Gatewood, a couple of times. This evidence was admissible as affecting her credibility as a witness. Roosevelt Gatewood did not testify.

Under the above statement, we do not think the court erred in overruling the demurrer to the evidence. In his instructions to the jury, the court submitted the issue of murder and manslaughter in the first degree. The jury found the defendant guilty of murder, and in our opinion the evidence justified such finding. The defendant went to the place where deceased was living. She had a knife at the time. The statements made by her justified the jury in reaching the conclusion that her acts were with a premeditated design to effect the death of deceased. The fact that she used a pocketknife did not lessen the crime. The manner of its use made it a "dangerous weapon" as the results here show. We have carefully read the case of Edwards v. State, 58 Okla. Cr. 15, 48 P. 2d 1087, relied upon by defendant, and find the facts in that case are very different from the facts in the instant case. It is unnecessary to review those facts. The statements made by the defendant in the instant case were made at the very time of the homicide and were a part of the res gestae. It was a statement which the jury had a right to consider on the question of the "premeditated design" of the defendant to commit the act at the time of its commission. In the Edwards Case the death penalty was assessed, and the case was reversed for numerous errors

committed on the trial. The court in that case recognized the rule that judicial confessions are admissible where they are voluntarily made, and they were made voluntarily in the instant case, and part of them at the very time of the commission of the offense.

Malice or a design to effect death is implied only when the homicide is committed by the use of a dangerous weapon or instrument, in such a manner as naturally and probably to cause death. McAndrews v. People, 71 Colo. 542, 208 P. 486, 24 A.L.R. 655.

Where the killing occurs by the use of a dangerous weapon, and not a deadly weapon, the question of intent, the manner of the use of the instrument, and the conduct of the defendant are questions of fact from which the jury may determine whether there was a design to effect death, and whether defendant should be convicted of the crime of murder or manslaughter in the first degree. If a killing is occasioned by the use of a deadly weapon, then the design to effect death may be inferred from the fact of the killing. But the better rule is that there should be evidence that deliberation in its manner of employment should also be made to appear. If the killing is committed by the use of a dangerous instrument, then the question of intent, and the manner of using the instrument, and the conduct of the defendant, become questions for the consideration of the jury, as a question of fact. See 26 Am. Jur. 362.

The evidence in the instant case was such as to justify the jury in finding that there was a design to effect death on the part of the defendant by the manner of the use of the knife, and the conduct of the defendant in going to the scene of the homicide prepared and with the intent to commit the crime charged.

In a number of cases this court has sustained the charge of murder in the first degree where the killing was committed by the use of knife or other instrument that was not necessarily a deadly weapon. Abby v. State, 72 Okla. Cr. 208, 114 P. 2d 499, 115 P. 2d 266; Johnson v. State, 1 Okla. Cr. 321, 97 P. 1059, 18 Ann. Cas. 300; Poling v. State, 12 Okla. Cr. 27, 151 P. 895, Ann. Cas. 1918E, 663; Taylor v. State, 20 Okla. Cr. 460, 203 P. 1049; Pulliam v. State, 61 Okla. Cr. 18, 65 P. 2d 426; and see, also, People v. Howard, 211 Cal. 322, 295 P. 333, 71 A. L. R. 1385.

The second assignment of error is based upon the refusal of the court to permit evidence of threats made by defendant's husband, Roosevelt Gatewood, against the defendant, and certain records which showed that he had pleaded guilty to carrying concealed weapons. This contention is based upon the fact that defendant testified that her husband held her while she was fighting with and cut deceased. We do not think this was error. There was no charge against her husband, and he was in no way interested except that he was attempting to keep defendant from cutting deceased. We do not see how any threat made by him prior to the difficulty between defendant and deceased, and the fact that he had pleaded guilty to carrying concealed weapons, could have been material to the issue of defendant's guilt in killing Lillie Wren.

The third assignment of error with reference to improper argument of the prosecution is because of the fact that the assistant county attorney referred to the largest blade of the knife as being the one which defendant used to cut deceased, claiming there was no evidence to support this statement. An examination of the record reveals that the knife was introduced in evidence. The tes-

timony was that there was a showing of blood on the blade, and that the knife was open when exhibited to the jury. This fact would have justified the argument made by the assistant county attorney. We do not think there was any error by reason of this assignment.

Finding no substantial error in the record, the judgment of the district court of Tulsa county is affirmed.

*JONES, J., concurs. DOYLE, J., not participating.*