## CORNELL v. STATE.

No. A-11223. April 12, 1950.

(217 P. 2d 528.)

**176**

John W. Tyree, Lawton, and Melton, McElroy & Vaughn, Chickasha, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst Atty. Gen., for defendant in error.

JONES, P. J. The defendant, Delbert Randle Cornell, was charged by an information filed in the district court of Grady county with the crime of murder, was tried, con-

victed, and sentenced to serve a term of life imprisonment in the State Penitentiary, and has appealed.

The first proposition presented in the brief of defendant is that the trial court erred in overruling the plea of former jeopardy filed by defendant.

The plea of former jeopardy is based upon the fact that an information was filed against the accused on February 20, 1947, identical to the information out of which this conviction was sustained; that on February 21, 1947, the defendant entered his plea of guilty to said information and was sentenced to serve a term of life imprisonment in the penitentiary. A few months after the plea of guilty was entered a habeas corpus action was instituted in this court by the petitioner in which he sought to vacate the judgment and sentence pronounced against him for the reason that he was an immature youth at the time the plea of guilty was entered; that he was inexperienced in court and no counsel was appointed to represent the accused at the time of his arraignment and plea. Upon a hearing before this court the judgment and sentence was vacated and set aside and the cause was remanded to the district court of Grady county, with instructions to proceed against the petitioner the same as if no arraignment had ever been held. Ex parte Cornell, 87 Okla. Cr. 2, 193 P. 2d 904.

Thereafter the county attorney of Grady county, instead of proceeding to arraign and try the defendant upon the information filed on February 20, 1947, commenced a new prosecution by filing a complaint before a committing magistrate charging the defendant with the crime of murder as aforesaid. After a preliminary examination, the defendant was ordered held to await trial before the district court. Thereafter an information was filed in the district court identical in language with the

information filed on February 20, 1947, charging the petitioner with the crime of murder of one Jake Phipps.

Counsel for the defendant assert that the plea of former jeopardy would not have been good under the decisions of this court if the accused had been proceeded against under the old information, but that when the prosecution commenced a new proceeding that the plea of former jeopardy was good.

It seems to be well settled that after a new trial is awarded the accused on his motion or request, it shall place him in the same position as if no trial had been had. Duncan v. State, 41 Okla. Cr. 89, 270 P. 335; Watson v. State, 26 Okla. Cr. 377, 224 P. 368, 371. This is in conformity to the Oklahoma Statute which provides:

"A new trial is a re-examination of the issue in the same court, before another jury, after a verdict has been given. The granting of a new trial places the parties in the same position as if no trial had been had." 22 O. S. 1941 § 951.

In construing this statutory provision our court stated in Watson v. State, supra:

"Section 2753 [22 O. S. 1941 § 951] provides that—

" 'The granting of a new trial places the parties in the same position as if no trial had been had.'

"This is clear and conclusive.

"The Legislature has prescribed the grounds upon which a new trial may be granted, and has imposed certain conditions on the defendant, one of which is that he shall be deemed to have waived his constitutional protection against former jeopardy.

"The sections above quoted measure the extent of the waiver and fix its necessity, and that necessity is that the party convicted must waive the entire right so as to bring himself within the power of the court to grant him a new

trial. He makes his motion with the full knowledge of the risk he takes and with all the possible consequences. To obtain a new trial he voluntarily waives a right that neither courts nor the Legislature can take from him— a right that he surrenders for his own benefit, and the exact extent of which is plainly written, as the terms on which it could be done, if his motion is granted.

"It follows that when he files his motion for a new trial he must be deemed to have waived his constitutional right to interpose the plea of having been once in jeopardy."

In Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, this court vacated a judgment on habeas corpus rendered against a youth who had been convicted of a capital offense. In that case the authorities were reviewed as to the effect of vacating the judgment of conviction and this court held that the action was comparable to one where a judgment of conviction was vacated on appeal and the cause remanded for a new trial and accordingly in that case we set aside the judgment of conviction and ordered the petitioner Meadows to be tried on the charge that had been filed against him. Later Meadows commenced a second habeas corpus action before this court and in the judgment rendered in that action this court held:

"The remanding of a prisoner for trial, after proceedings upon a plea of guilty have been vacated, is not subject to the objection that he is put in jeopardy twice for the same offense." Ex parte Meadows, 71 Okla. Cr. 353, 112 P. 2d 419, 420.

The rule is stated in 22 C.J.S., Criminal Law, §§ 271, 272, as follows:

"It is an established principle of law that an accused in a criminal case who procures a verdict and judgment against him to be set aside or arrested by the court may be tried anew upon the same or another indictment for the same offense of which he was convicted, even after

he has served a part of the sentence imposed on him in the first conviction. * * *

"Where a new trial was granted on motion of accused, and the verdict and conviction are set aside, he thereby waived his right and is estopped to plead the former conviction as a bar to another trial on the same or a new indictment."

The county attorney commenced the prosecution anew against the defendant for the reason that he felt the legal reasons assigned for vacating the judgment in the district court would also invalidate the proceedings before the committing magistrate if defendant had appeared before the magistrate without counsel.

Under the law, when this court vacated the judgment on the plea of guilty entered under the first information which was filed and ordered the case remanded for a new trial, the defendant was in the same position as if no trial had ever been had and the county attorney could at his option elect to try the defendant under the information which had been filed against him or he could commence a new prosecution by the filing of a complaint before a committing magistrate. Until an accused is placed in jeopardy the criminal action filed against him can be dismissed and refiled at the discretion of the county attorney, subject, of course, to the law governing the limitation of time within which a prosecution can be instituted. Hembree v. Howell, 90 Okla. Cr. 371, 214 P. 2d 458.

It is next contended that the evidence was wholly insufficient to sustain a conviction.

The proof of the state showed that the deceased was a farmer living alone in the Farwell Community. The deceased and his wife had separated and deceased to avoid paying support money to his wife did not carry a

bank account but instead carried his money in a pocket-book in the bib of his overalls.

The defendant was a young man about 17 years of age who had joined the army, but at the time of the homicide he had fled from the army and had been living with one person and another in the vicinity of the home of the deceased for several weeks. He had also spent some time at the home of the deceased where he assisted in the farm chores. The night before the homicide occurred defendant stole a 1942 Oldsmobile automobile in Chickasha. The next day in attempting to drive to the farm of deceased he slipped off of a little bridge crossing a creek and became stuck. One Earl Mutz, a farmer, testified that he came along and pulled the defendant out and the defendant proceeded on to the home of Phipps, the deceased. Later that morning the defendant and deceased were seen in the field together. Shortly after noon Mr. and Mrs. Glenn Setters, who were well acquainted with the defendant, saw him on a side road driving north at a high rate of speed. About 4 p.m. on that date a neighbor came to the home of the deceased and found him lying on the bed with a bullet hole through his heart. He had been killed by a bullet discharged from a .22 rifle. The billfold of the deceased, his .22 rifle and a leather jacket were all missing. After the death of Mr. Phipps became known a search was instituted for the defendant. He was apprehended several days later in California. Upon his return to Chickasha he signed a written statement detailing at length all of the facts surrounding the commission of the homicide. In this statement he admitted killing the deceased, taking his money and fleeing in the Oldsmobile automobile. He then took the sheriff and other parties to where he had thrown the rifle of the deceased into a creek and after fishing around in the creek the rifle was recovered. There were other witness-

es who testified who corroborated many of the things detailed in the confession of the accused, but it is unnecessary to lengthen this opinion by reciting all of this evidence. It is sufficient to state that the evidence was not only sufficient to sustain the conviction of the accused but it overwhelmingly showed his guilt.

It is next contended that the trial court erred in refusing to give two instructions requested by the defendant and in failing to instruct on the defendant's theory of the case. In the testimony of the defendant at the trial he related that he had agreed with one Alva Fulton, the son-in-law of the deceased, whereby he and Fulton were to rob the deceased; that pursuant to this plan he and Fulton entered the home of deceased to perpetrate the robbery but that Fulton instead seized the .22 rifle and killed Mr. Phipps. The defendant stated that after the killing occurred he and Fulton took the billfold of deceased and divided the money.

One of the instructions requested by the defendant was an instruction submitting the issue of assault with a sharp or dangerous weapon, and the other instruction was an instruction submitting the issue of assault and battery. The court correctly refused to submit either of these instructions to the jury. Under the evidence of defendant he was guilty of murder because he admitted that he had conspired with Fulton to rob the deceased and in the course of robbery Fulton had killed deceased. Although defendant denied that he fired the shot that killed Phipps, still he was guilty of murder under the Oklahoma statutes. 21 O.S. 1941 § 701; Valdez v. State, 18 Okla. Cr. 204, 194 P. 451; Sands v. State, 61 Okla. Cr. 206, 67 P. 2d 62; Morris v. State, 68 Okla. Cr. 147, 96 P. 2d 88. In Valdez v. State, supra, this court said:

"While the evidence leaves in doubt whether one or both of the defendants actually fired the shot or inflicted the knife wound that caused the death of the deceased, yet, the evidence showing beyond a reasonable doubt that a conspiracy existed between the defendants to commit the robbery, and that the homicide was incidental to the robbery, it is entirely immaterial whether one or both of them did the actual killing. Both are equally guilty.

"Where parties voluntarily act together in the commission of an act which may result in death to another, and such death ensues therefrom, all such parties so acting together are as guilty of the murder as if they had intended the death of such party. [18 Okla. Cr. 204, 194 P. 455.]

In Carle v. State, 34 Okla. Cr. 24, 244 P. 833, 836, it was said:

"It is well settled that, where two or more persons enter into a conspiracy to commit a felony under such circumstances as will, when tested by human experience, probably result in the taking of human life, it is presumed that all understand the consequences, and, if death happens in the prosecution of such enterprise, all are alike guilty of a homicide."

The instructions given by the court were all that were necessary to be given in this action. There was no defense. The defendant was guilty of murder under his own statement.

Lastly, it is contended that the trial court erred in submitting to the jury the question as to whether the written statement given by the defendant was voluntarily made. Counsel were correct in their contention that when the question as to the voluntary character of a confession is interposed the court should hear the evidence concerning the same in the absence of the jury. The question presented is one of law for the court. If it is determined that the confession is admissible as a matter of law

then the defendant is entitled to have the circumstances surrounding the giving of the confession brought before the jury for the purpose of enabling the jury to give whatever weight it might see fit to the confession.

In Pressley et al. v. State, 71 Okla. Cr. 436, 112 P. 2d 809, it is held:

"Where the competency of a confession is challenged on the ground that, if made, it was not voluntary, its admissibility is primarily a question for the court. In the absence of the jury, the court should hear the evidence offered respecting the facts and circumstances attending such alleged confession, and the burden is on the defendant to show that it was procured by such means or under such circumstances as to render it inadmissible, unless the evidence on the part of the state tends to show that fact. If it is held competent, and proof of the same admissible, the defendant is entitled to have the evidence in regard to the facts and circumstances under which it was made given anew to the jury, not that the jury may pass upon its competency or admissibility, but for the purpose of enabling them to judge what weight and value should be given to it as evidence, and the jury may disregard it if they are not satisfied that it was voluntarily made."

The trial court did not follow the correct procedure but the error was favorable to the defendant. There is nothing in the record to show that the defendant was not given a fair and impartial trial. He was guilty of an unlawful, cold-blooded, premeditated murder, and deserved at least the punishment which was given.

The judgment and sentence of the district court of Grady county is affirmed.

BRETT and POWELL, JJ., concur.