# GOVERNMENT OF THE VIRGIN ISLANDS
## v.
## JOHN LAKE, Appellant

## No. 15,794

## United States Court of Appeals
### Third Circuit

## Argued April 26, 1966

## Decided June 22, 1966

*See, also, 362 F.2d 770*

FREDERICK D. ROSENBERG, ESQ. (BAILEY and WOOD), St. Thomas, Virgin Islands, *for appellant*

JOHN E. STOUT, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before STALEY, *Chief Judge,* and MARIS and McENTEE, *Circuit Judges*

MARIS, *Circuit Judge*

### OPINION OF THE COURT

The defendant John Lake appeals from his conviction in the District Court of the Virgin Islands of murder in the first degree. By information, the Government charged that

the defendant on April 10, 1965, in violation of 14 V.I.C. § 922(a)(1), with malice aforethought, did willfully, deliberately and with premeditation kill one Leonore Richardson Lake by stabbing her several times about her body with a deadly weapon, a pocket knife, thereby inflicting mortal wounds from which she died on that day. The defendant entered a plea of not guilty to the charge of murder in the first degree. His case was tried by the court without a jury. At the close of the Government's case the defendant moved for dismissal of the information on the ground that the Government had not proved beyond a reasonable doubt that the defendant had killed Leonore with malice aforethought, or willfully, deliberately and with premeditation. The Government, treating the motion as one for judgment of acquittal, opposed it. After argument the District Court denied the motion. No evidence was offered on behalf of the defendant. The District Court entered a judgment convicting the defendant of murder in the first degree and sentenced him to life imprisonment. This appeal by defendant followed.

The facts established by or fairly to be inferred from the evidence in the case, which as we have said was solely that produced by the Government, may be summarized as follows:

The defendant, an alien, had been married to Leonore, a Virgin Islands citizen. They lived with Leonore's mother, Lyra Lloyd, at No. 22 Commandante Gade in Charlotte Amalie, St. Thomas. Two or three days prior to the killing the defendant and Leonore had had a disagreement about papers which apparently involved the defendant's status as an alien. Leonore had told him she was "not fixing any papers". Shortly before the killing Leonore had instituted an action for divorce and when confronted with the papers by the defendant had told him: "John, I don't know anything about it. Don't ask me. You have the paper; read it."

On the afternoon of the fatal day the defendant was at No. 22 packing his suitcase. Leonore said she was going shopping and when the defendant asked to go along she told him there would not be room in the car for him. When she returned he was still packing his suitcase in the bedroom. There was testimony by neighbors that about 6:15 p.m. they saw Leonore and the defendant sitting on the gallery of No. 22, Leonore reading a comic book and the defendant looking at his wife. Mrs. Lloyd testified that she and her daughter Leonore were sitting in the living room watching television about 7 p.m. The defendant came out of the bedroom with his suitcase, passed through the living room and said: "Lee, I will come back." He did return about 8 p.m. and asked Leonore to let him stay for the night because the next day was Sunday and he would be "going for good". Leonore told him to put his cot in the living room and sleep there and he took his cot to the living room as she requested.

The area which served as Leonore's bedroom was partitioned off from Mrs. Lloyd's sleeping quarters by a screen which did not reach the ceiling, the door of which Mrs. Lloyd could reach over and unhook on the inside. Mrs. Lloyd went to bed about 10:30 p.m. and shortly thereafter Leonore retired to her bedroom. Mrs Lloyd observed the defendant standing in Leonore's bedroom; a child was in the bed with her. Mrs Lloyd heard Leonore say "John, leave me alone. I have to say my prayers. I have to go to church Sunday morning." Mrs. Lloyd also heard a tapping sound but no other conversation except her daughter's prayers. Mrs. Lloyd then fell asleep.

There was testimony by Sydney George, a friend of the defendant, that on the night of the killing, after he had gone to bed, the defendant had appeared at his window, called him and asked him to lend him a file. When told that

he could not get the file until tomorrow the defendant told him tomorrow wouldn't do and left.

About 11:30 p.m. Mrs. Lloyd was awakened by Leonore's crying "Oh, God, John. You're going to kill me." She jumped out of bed, opened the door of the screen and saw Leonore in bed and the defendant standing over her, his right hand raised and his left hand on her throat. Leonore cried "Help, Mother. Help, John kill me." Mrs. Lloyd pushed him aside, picked Leonore up from the bed and walked through the living room screaming for help with Leonore leaning against her shoulder. Neighbors heard her screams, they broke open the front door and Mrs. Lloyd came out with Leonore who fell to the floor at the doorway. The defendant followed them out of the house, holding an open knife in his right hand, jumped to the street and ran away. Dr. Lu of the staff of the Knud Hansen Memorial Hospital arrived with an ambulance about 11:50 p.m. and found Leonore lying dead on the floor of the gallery outside the door of No. 22. There were 43 stab wounds on her body, 19 in the chest, 5 on the face, 5 on the right hand, 13 on the left hand and one on the left thigh. There was a laceration of the subclavian vein and two lacerations on the trachea, any one of which could have caused her death. In addition two stab wounds in the chest were deep enough to cause a massive hemorrhage in the lung cavity. The nature of the wounds indicated that they had been caused by a sharp pointed instrument. Leonore died as a result of massive hemorrhage caused by the stab wounds.

At 11:40 p.m. the defendant appeared at police headquarters in the fort in Charlotte Amalie and volunteered the statement that "he and his wife, Leonore Lake, had an argument and he took up his things to leave and both of them caught up in a fight. He held her hand and told her to come and go. She picked up a fork. He lost control and picked up a knife and stabbed her." A police detective dis-

patched to investigate found a folding pocket knife, four inches long and one inch wide in size, in an open gut on the west side of Commandante Gade on the direct route between No. 22 and police headquarters. There was some blood on it and it was closed. Mrs. Lloyd identified it as belonging to the defendant. Dr. Lu testified that it could have caused the incisions in Leonore's body. The police detective also searched Leonore's bedroom the same night but found no fork there.

Title 14 V.I.C., §§ 921 and 922, defines the crime of murder, as follows:

"§ 921. Murder defined

Murder is the unlawful killing of a human being with malice aforethought.

"§ 922. First and second degree murder defined

(a) All murder which—

(1) is perpetrated by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing; or

(2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem—

is murder in the first degree.

(b) All other kinds of murder are murder in the second degree."

 On this appeal the defendant contends that the evidence does not support his conviction of murder because of the absence of a showing that the killing was with malice aforethought and that, in any event, it does not support his conviction of first degree murder because the evidence does not support a finding that the killing was willful, deliberate and premeditated. On testing the sufficiency of the evidence, to ascertain whether or not the Government made a prima facie case, we must view the evidence in the light most favorable to the Government. United States v. Brown, 2 Cir. 1956, 236 F.2d 403, 405. The question on appeal is whether the evidence was sufficient to justify the trial judge as trier of the facts in concluding that there was

601

no reasonable doubt that it was not only consistent with defendant's guilt, but also inconsistent with any reasonable theory of his innocence. De Luna v. United States, 5 Cir. 1955, 228 F.2d 114, 116. It is, of course, true that in a criminal case due process of law includes the presumption of innocence and places the burden on the prosecution to prove the guilt of the accused beyond a reasonable doubt by the evidence which it offers and the inferences which may reasonably be drawn therefrom. If, however, the prosecution proves facts from which an inference relevant to the question of the accused's guilt may reasonably be drawn, the burden is necessarily cast upon the accused of going forward with evidence upon the particular point to which the inference relates if he desires to rebut it. The burden upon the accused is merely to go forward with enough evidence to raise a reasonable doubt as to the validity of the inference. Government of the Virgin Islands v. Smith, 3 Cir. 1960, 4 V.I. 212, 219, 278 F.2d 169, 173. But mere argument by his counsel that the inference should not be drawn is not enough if the inference is a reasonable deduction from the prosecution's unrebutted evidence. Here, however, as we have seen, the defendant offered no evidence and the inferences to be drawn from the Government's evidence were in no way rebutted.

 We turn then to the defendant's contention that the Government failed to prove the element of malice aforethought which is necessary for a conviction of murder and that, therefore, his conviction should be reduced to one for manslaughter. "Malice aforethought" is the characteristic mark of all murder, as distinguished from the lesser crime of manslaughter which lacks it. It does not mean simply hatred or particular ill will, but extends to and embraces generally the state of mind with which one commits a wrongful act. It may be discoverable in a specific deliberate intent to kill. It is not synonymous with premeditation,

however, but may also be inferred from circumstances which show a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences. It includes all those states of mind in which a homicide is committed without legal justification, extenuation or excuse. State v. Jacowitz, 1941, 128 Conn. 40, 20 A.2d 470, 472; Commonwealth v. McLaughlin, 1928, 293 Pa. 218, 142 A. 213, 215.

■ "The proof of homicide, as necessarily involving malice," the Supreme Court said in Stevenson v. United States, 1896, 162 U.S. 313, 320, "must show the facts under which the killing was effected, and from the whole facts and circumstances surrounding the killing the jury infers malice or its absence. Malice in connection with the crime of killing is but another name for a certain condition of a man's heart or mind, and as no one can look into the heart or mind of another, the only way to decide upon its condition at the time of a killing is to infer it from the surrounding facts, and that inference is one of fact for a jury. The presence or absence of this malice or mental condition marks the boundary which separates the two crimes of murder and manslaughter." See, also, Turner v. Commonwealth, 1915, 167 Ky. 365, 180 S.W. 768, 769; 1 Wharton's Criminal Law and Procedure (1957) §§ 241–243.

■ It is well settled that where the killing is proved to have been accomplished with a deadly weapon malice may be inferred from that fact alone. It is inferred when the killing is effected by the use of a weapon or other instrument in such a manner as may be expected naturally and probably to cause death. Tucker v. United States, 1894, 151 U.S. 164; Liggins v. United States, D.C. Cir. 1924, 297 F. 881, 885; State v. Trott, 1925, 190 N.C. 674, 130 S.E. 627; Bennett v. State, 1929, 152 Miss. 728, 120 So. 837; Gatewood v. State, 1945, 80 Okla. Crim. Rep. 135, 157 P.2d 473; Powell v. State, 1952, 46 Del. 551, 86 A.2d 371; Gann

v. State, 1964, 214 Tenn. 711, 383 S.W.2d 32; 26 Am. Jur. Homicide, §§ 307, 308; 40 C.J.S. Homicide § 25; 41 C.J.S. Homicide § 316; 1 Wharton's Criminal Law and Procedure (1957) §§ 62, 242. Whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character. State v. Litman, 1927, 106 Conn. 345, 138 A. 132, 134–135; Commonwealth v. Le Grand, 1939, 336 Pa. 511, 9 A.2d 896, 899; State v. Cox, 1942, 128 N.J.L. 108, 23 A.2d 555, 557; Wisniewski v. State, 1957, 51 Del. 84, 138 A.2d 333, 336. Pocketknives have, under the circumstances of their use, been regarded as deadly weapons. Webb v. State, 1894, 100 Ala. 47, 14 So. 865, 867; State v. Roan, 1904, 122 Iowa 136, 97 N.W. 997; Thomas v. State, 1942, 31 Ala. 1, 9 So.2d 150, 153; Gatewood v. State, 1945, 80 Okla. Crim. Rep. 135, 157 P.2d 473; People v. Walker, 1950, 99 Cal. App.2d 238, 221 P.2d 287, 289; Longoria v. State, 1961, 53 Del. 311, 168 A.2d 695, cert. den. 368 U.S. 10.

In the present case the trial judge could fairly infer from the unrebutted evidence that it was the defendant's pocket knife with which he committed the assault upon Leonore. That the knife was sufficient, in the hands of the defendant, to produce death was clearly proved. The selection of a deadly weapon, its use to effect wounds in vital parts of Leonore's body, and especially the delivery of 43 thrusts, were all circumstances pointing to the existence, at the time of the assault, of the mental state described as malice, and which would justify the inference that the killing of Leonore was committed with that malice aforethought to which the statute refers. The defendant nonetheless urges that malice may not be inferred in his case. He argues that the Government's evidence (he here ignores the evidence of his own statement to the police) does not show that he had a quarrel with Leonore or that he bore her ill will but on the contrary that they were

peacefully in her bedroom, that he had resigned himself to the divorce action and that he had procured other living quarters, all of which, he says, negative the idea of malice. The difficulty with this contention is that these facts were not sufficient to rebut the presumption of the existence of malice at the instant of the killing which is raised by his use of his knife to stab Leonore 43 times. Whatever may have been the defendant's prior state of mind this action raised a clear inference of a desperate overpowering desire and intention to kill her when he stabbed her. We think it inconceivable that anyone could stab another 43 times without an intent to kill. We are satisfied that the trial judge was justified in drawing the inference that the killing was committed with malice aforethought.

The defendant's other contention is that even if the evidence produced by the Government is regarded as sufficient to prove the crime of murder, the Government did not prove that the killing was willful, deliberate and premeditated, the necessary elements of first degree murder. In support of his argument the defendant cites People v. Howard, 1930, 211 Cal. 322, 295 P. 333, 336, in which the court stated:

". . . To be murder in the first degree, under our statute, the killing must be premeditated, except when done in the perpetration of certain felonies; that is to say, the unlawful killing must be accompanied with a deliberate and clear intent to take life. If the act be preceded by, and be the result of, a concurrence of will, deliberation and intent, the crime of first-degree murder is proved. . . . When the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree, and not murder of the first degree."

We agree with the Supreme Court of California that the additional elements of willfulness, deliberateness and premeditation must be established to the satisfaction of the

trier of the facts beyond a reasonable doubt in order to bring a murder within the first degree.

 To premeditate a killing is to conceive the design or plan to kill. State v. Anderson, 1961, 35 N.J. 472, 173 A.2d 377, 389–390. A deliberate killing is one which has been planned and reflected upon by the accused and is committed in a cool state of the blood, not in sudden passion engendered by just cause of provocation. State v. Roedl, 1945, 107 Utah 538, 155 P.2d 741, 749. It is not required, however, that the accused shall have brooded over his plan to kill or entertained it for any considerable period of time. Although the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill. State v. Hammonds, 1939, 216 N.C. 67, 3 S.E.2d 439, 445; Keenan v. Commonwealth, 1863, 44 Pa. 55, 56–57. See, also, Bullock v. United States, D.C. Cir. 1941, 122 F.2d 213, 214; 1 Wharton's Criminal Law and Procedure (1957) §§ 267, 268; 40 C.J.S. Homicide § 33.

 The defendant argues that the record is barren of any affirmative proof of premeditation on his part. It is true that there is no direct proof of the defendant's mental processes in this regard. But since these are wholly subjective it is seldom possible to prove them directly. If premeditation is found it must ordinarily be inferred from the objective facts. Every sane man is presumed to intend all the natural and probable consequences flowing from his deliberate acts. Allen v. United States, 1896, 164 U.S. 492. Accordingly, if one voluntarily does an act, the direct and natural tendency of which is to destroy another's life, it may fairly be inferred, in the absence of evidence to the contrary, that the destruction of that other's life was intended.

 The defendant further argues that the lack of any evidence as to what happened in the bedroom prior to the

killing and the evidence of the peaceable nature of the defendant's conduct during the afternoon and evening prior to the killing rebut the inference that he premeditated murder. We cannot agree. Indeed, to the contrary, the absence of any quarrel provoking the defendant to action in hot blood coupled with his deliberately seeking a file which he said he needed that night, and his unexplained return to No. 22 after he had taken his suitcase away, together with the very viciousness of the attack itself which took place stealthily in the dead of night and which he had to prepare for in advance by taking out and opening his pocket knife, fully justified the trial judge in finding that the killing was willful, deliberate and premeditated. Moreover there were the facts that Leonore had instituted divorce proceedings and had refused to cooperate in helping him to meet his immigration problems which may well have helped influence him to form his plan to kill her. In the absence of any countervailing evidence and taking all the evidence into consideration we cannot say that it does not support the trial judge's finding that the defendant was guilty of a willful, deliberate and premeditated killing.

█ The defendant further urges that his conduct, after Leonore was killed, was not the conduct of one who had deliberately planned and carried out a murder in cold blood. In this respect he points out that he ran to police headquarters and voluntarily surrendered as did the defendant in People v. Price, 3 Cir. 1950, 2 V.I. 492, 181 F.2d 394. The Price case, however, is distinguishable on its facts. In that case the defendant himself testified and the story which he told the police with respect to the killing was fully corroborated by other evidence. Here, however, the defendant's story to the police implying that he had been threatened by his wife with a fork before he stabbed her was contradicted by the police testimony that a search of Leonore's room did not disclose a fork. Thus the trial

judge might well have concluded that defendant's actions were intended to conceal his premeditated, deliberate act and make it appear as a killing in self defense.

The judgment of the District Court will be affirmed.