Freddie HUITT, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–628.

Court of Criminal Appeals of Oklahoma.

March 29, 1977.

William J. Hornbostel, Stillwater, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge.

Freddie Huitt, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Payne County, Case No. CRF–75–289, for the offense of Murder in the Second Degree, in violation of 21 O.S.Supp.1973, § 701.2 ¶ 1. His punishment was fixed at a term of ten (10) years to life imprisonment and· from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Carolyn Chestnut, the deceased's wife, testified that on the late afternoon of November 8, 1975, she and her husband went to the Wagon Wheel Bar in Cushing, Oklahoma. They stayed for approximately an hour before leaving with defendant's common-law wife and her daughter. They ate dinner, went to several other bars, eventually ending up at the SPA Bar, around 8:00 p. m. They sat down at a table with Bobby and Iris Woods and Jackie and Barbara Jones. Defendant ordered a beer and put it down on a nearby table; he then headed toward the back of the bar, stumbled and dropped an opened pocket knife on the floor. He picked it up and placed in in the pocket of his jacket. Defendant then started arguing with Dorothy Woods. Her husband attempted to settle the argument and defendant stated that if "Dorothy did it again he would slit her throat." [Tr. 47] Her husband told defendant not to act that way and defendant stated, "You don't believe that I can't cut a throat?". He then reached across the table and stabbed Chestnut who was still seated in his chair. Chestnut was taken to the Cushing Hospital and subsequently to St. Anthony's Hospital in Oklahoma City.

Donita Fulmek testified that she was working at the SPA Bar on the evening in question. Defendant came into the bar at approximately 8:30 p. m.; ordered a drink and someone invited him to join the party. She observed defendant lean over and strike Charles Chestnut. A woman screamed that Chestnut was bleeding. She went to the telephone to call an ambulance. The defendant followed her and asked who she was calling. She replied, "an ambulance," and defendant stated "well you had better not call the police." Defendant then said something about "cut" and "throat" and walked out the door.

J. R. Harless testified that he was in the SPA Bar on the evening of November 8, 1975. He heard the sound of a glass breaking and observed, in a bar mirror, defendant standing behind him near the table where the deceased was seated.

Officer Calvin Wright testified that he arrived at the SPA Bar at 8:43 p. m. He observed Charles Chestnut sitting in one of the booths, bleeding from the neck. He arrested the defendant later that night in front of the Wagon Wheel Bar.

Martin Jackson Jones, Jr. testified that he was sitting with the Chestnuts in the SPA Bar; that he was "pretty well intoxi-

cated," but remembered defendant sitting at a table next to them and that Charles Chestnut had been stabbed.

Barbara Jones testified that she was also with the Chestnuts in the bar. She observed the defendant enter the bar; she went to the bathroom and when she returned, Chestnut had been injured and an ambulance had arrived.

Bobby Wood testified that the defendant entered the bar and was invited to sit down at their table. Defendant told Chestnut to leave him alone. He next heard some bottles tipping over and someone said "he's bleeding." He testified that he was intoxicated and did not remember exactly what happened.

Iris Wood testified that Chestnut kept insisting that defendant join them at the table. Defendant stated, "don't mess with me because I am messed up in my own mind so I don't want you to mess with me." [Tr. 177] She left the table and went to the bar to get some quarters. She heard a coke glass being knocked over and observed that Chestnut was bleeding from the neck. The bar maid made a telephone call. Defendant asked her if she was going to call the police. She replied that she was calling an ambulance. Defendant stated, "I know it because he's been cut or stabbed or something like that." [Tr. 179]

Dr. Douglas Green testified that he observed Charles Chestnut at the emergency room of the Cushing Hospital at 8:45 p. m. He performed surgery upon the injury and found that the bleeding was coming from "relatively superficial divisions" of the jugular vein. The bleeding was controlled and Chestnut maintained a stable condition until sometime after midnight. Sufficient deterioration occurred thereafter that he was transferred to St. Anthony's Hospital in Oklahoma City. Dr. Green also stated that he agreed with Dr. Chapman's finding that the stab wound to the neck was the cause of death.

Dr. A. J. Chapman testified that he was the Chief Medical Examiner for the State of Oklahoma; that on November 11, 1975, he performed an autopsy on the body of Charles Chestnut. It was his opinion that the cause of death was a stab wound to the neck.

For the defense, Dorothy Wood Huitt testified that she went to the Wagon Wheel Bar at approximately 6:00 p. m. Defendant was drinking with the Chestnuts. The defendant and Chestnut discussed repairing defendant's automobile. She left the Wagon Wheel with the Chestnuts. They ate dinner and met the Joneses and Woods at another bar. They all proceeded to the SPA Bar. Defendant entered the bar approximately ten minutes after they arrived. Chestnut invited the defendant to sit with them. Defendant refused saying he didn't want to sit by the witness. Chestnut continued to call defendant names and defendant stated, "leave me alone; stay out of my face." Defendant grabbed Chestnut and again told him to leave him alone. Defendant left the table and went to the bar; returned to the table next to theirs and a commotion started. She testified that she did not see defendant stab Chestnut.

Bob L. McNair testified that he was employed as a bartender at the 33 Club. Defendant came into the club some time after 9:00 p. m. and had a funny expression on his face and his eyes were glassy.

Laura Grant testified that she was employed at the Wagon Wheel and the defendant and Chestnut both drank beer and whiskey.

Ruby Anderson testified that she observed defendant about 11:15 p. m.; his eyes were glassy and he did not recognize her.

■ Defendant asserts, in his first assignment of error, that the committing Magistrate erred in binding him over for trial. Defendant argues that the State did not introduce sufficient evidence at the preliminary hearing to show probable cause that the knife wound was the cause of death. We have carefully examined the preliminary hearing transcript and find that although the State failed to introduce medical testimony to establish the cause of death, that the same was established by

circumstantial evidence. Carolyn Chestnut testified that the defendant stabbed her husband on November 8, 1975, and that he was bleeding very badly. She further testified that prior thereto he was in excellent condition and did not suffer any other injury to her knowledge until the date of his death on November 10, 1975.

■ In *State v. Edmondson,* Okl.Cr., 536 P.2d 386 (1975), we set forth the two elements of the corpus delicti of a homicide case as (1) fact of death and (2) the criminal agency of another responsible for that death. We further stated, as follows:

". . . The State is not required to present evidence sufficient to convict at trial, and there is a presumption that the State will strengthen its evidence at trial. See *McAlister v. State,* 97 Okl.Cr. 167, 260 P.2d 454 (1953). The State's burden is only to show that an offense has been committed and probable cause to believe the defendant committed said offense, 22 O.S.1971, § 264. And the State may meet this burden, if need be, by circumstantial evidence, such as was done by the State at the preliminary examination in this case. We, therefore, hold that the State has more than adequately met the prerequisites mandated by the statutes, and the defendant's Motion to Quash should have been overruled. . . ."

We, therefore, find defendant's first assignment of error to be without merit.

■ Defendant contends, in the second assignment of error, that the trial court erred in overruling his motion for funds to employ a medical expert to assist in his defense, at the expense of the State of Oklahoma. Under the existing statutes of this State, there is no provision authorizing the disbursement of funds for employment of expert witnesses for indigent defendants. In dealing with a similar assignment of error in *Hardt v. State,* Okl.Cr., 490 P.2d 752 (1971), we stated:

". . . The Federal Statutes authorize trial courts to appoint an investigator where such services are necessary, wherein under the statutes of the State of Oklahoma, there is no provision for such

appointments. Until our Legislature sees fit to enact legislation providing for such appointments, the trial courts are without authority to comply with such requests."

In accordance with the above-cited authority, we find defendant's second assignment of error to be without merit.

■ Defendant states, as his third assignment of error, the contention that there was insufficient evidence to support the verdict of the jury. Defendant argues that the State failed to introduce sufficient evidence to show premeditation or cause of death. We disagree. We would first observe that the question of premeditation was submitted to the jury under proper instructions. In *Gatewood v. State,* 80 Okl.Cr. 135, 157 P.2d 473 (1945), we stated:

"Where the killing occurs by the use of a dangerous weapon, and not a deadly weapon, the question of intent, the manner of the use of the instrument, and the conduct of the defendant are questions of fact from which the jury may determine whether there was a design to effect death, and whether defendant should be convicted of the crime of murder or manslaughter in the first degree. If a killing is occasioned by the use of a deadly weapon, then the design to effect death may be inferred from the fact of the killing. But the better rule is that there should be evidence that deliberation in its manner of employment should also be made to appear. If the killing is committed by the use of a dangerous instrument, then the question of intent, and the manner of using the instrument, and the conduct of the defendant, become questions for the consideration of the jury, as a question of fact. . . ."

■ We would further observe that the State did, in fact, introduce sufficient evidence to establish the cause of death.

■ Both Dr. Green and Dr. Chapman testified unequivocally that the cause of death was a stab wound to the neck. We, therefore, find this assignment of error to be wholly without merit.

■ Defendant next asserts that the trial court erred in failing to give the defendant's requested instructions. We have carefully examined defendant's requested instructions and observe that the evidence did not justify the giving of instructions on Assault with Intent to Kill or Assault with a Dangerous Weapon. See *Cornell v. State,* 91 Okl.Cr. 175, 217 P.2d 528 (1950) and *Fields v. State,* Okl.Cr., 322 P.2d 431 (1958). The jury, in the instant case, was properly instructed that they must find, beyond a reasonable doubt, that the defendant was guilty of Murder or Manslaughter, or that he should have been acquitted. We have previously held that when the instructions, considered as a whole, fairly and correctly state the law applicable to the case being tried, they will be considered sufficient to meet the requirements of the law. See *Williams v. State,* Okl.Cr., 478 P.2d 359 (1970).

Defendant contends, in the final assignment of error, that the trial court erred in denying use of demonstrative evidence in the cross-examination of Dr. Green. In his brief, defendant states:

"The use of demonstrative evidence, in this case a diagram offered by Defendant, is within the discretion of the trial court, and in absence of abuse of such discretion, will not constitute error. *Garrett v. State,* 95 Okl.Cr. 44, 239 P.2d 439 (1951). The transcript of the colloquy among the Court, District Attorney, defense counsel and Dr. Green [in a hearing outside the presence of the jury] (Tr. 206–218) reflects that the Court failed to exercise its discretion in any meaningful fashion. Dr. Green's testimony is essentially that some tangible evidence would be helpful to the jury (Tr. 212). And that he brought along a book specifically for that purpose (Tr. 209). The diagrams offered by counsel were also accurate representations (Tr. 210).

"Coupled with this testimony is the fact that the District Attorney had agreed to provide some form of demonstrative evidence, since he had greater access to the resources of the State Medical Examiner's office (Tr. 216, 217). And that he [the District Attorney] made a substantial effort to do so. In light of the testimony and agreement of counsel, it was clearly an abuse of the trial court's discretion to fail to allow the use of such demonstrative evidence."

Just prior to the conclusion of the hearing held outside the presence of the jury concerning the demonstrative evidence, the following transpired:

"MR. HORNBOSTEL: And I do have one final question I need to put in the record, that I need to put to the doctor.

"BY THE COURT: In front of the jury?

"MR. HORNBOSTEL: No. These are pictures that depict accurately the anatomy of this portion of the neck?

"A. Yes, these are good pictures. They'd be good, you know, for anyone that has knowledge, forknowledge [sic].

"BY THE COURT: A medically-trained person?

"A. Yes.

"MR. HORNBOSTEL: But you're not, you just feel they'd be—

"A. If you start off it would be like dropping someone in the middle of the ocean and saying, 'swim out'.

"MR. HORNBOSTEL: O.K. That's all." [Tr. 218]

■ Based upon the expert witnesses' testimony that the diagrams would tend to confuse the jury, we are of the opinion that the trial court did not abuse its discretion in denying their use.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly AFFIRMED.

BLISS and BRETT, JJ., concur.