**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**
v.
**RALPH LANCLOS, Appellant**

D.C. Crim. No. 46-1971

United States Court of Appeals

Third Circuit

Argued February 2, 1973

Filed March 27, 1973

Thomas D. Ireland, Esq. (Ireland & Finucan), St. Thomas, V.I., *counsel for appellant*

FREDERICK G. WATTS, ESQ., Assistant United States Attorney, Charlotte Amalie, St. Thomas, V.I., *counsel for appellee*

Before VAN DUSEN, ROSENN and HUNTER, *Circuit Judges*

OPINION OF THE COURT

HUNTER, *Circuit Judge*

The defendant Ralph Lanclos appeals from his conviction in the district court of the Virgin Islands of murder in the first degree. By information, the government charged that the defendant, on April 30, 1971, in violation of 14 V.I.C. § 922(a)(1), with malice aforethought, did willfully, deliberately and with premeditation kill one Keith Stevens by shooting him with a pistol, thereby inflicting mortal wounds from which he died. The defendant entered a plea of not guilty, and his case was tried before a jury which found him guilty of murder in the first degree. At the close of the government's case, the defendant moved for a dismissal of the information on the ground that the government had not proved beyond a reasonable doubt that the defendant had killed Stevens with deliberation and premeditation. The government opposed this motion, and it was denied by the district court after a brief oral argument. After the jury found defendant guilty of first degree murder, he moved for a judgment of acquittal or, in the alternative, for a new trial. The district court denied this motion, and defendant was sentenced to a mandatory life term. 14 V.I.C. § 923(a). This appeal followed.

A brief summary of the evidence presented in this case is appropriate:

At about 4:30 a.m. on April 30, 1971, the defendant shot and killed Keith Stevens outside of the Lindberg Bay Beach Club ("Beach Club") on St. Thomas. The defendant

testified at trial that he shot Stevens, but he claimed that he did so in self-defense because he was being "nicked" or "cut." The homicide took place during "carnival" festivities, and the defendant apparently had not slept for nearly twenty-four hours and had consumed several drinks during the evening. Nevertheless, it does not appear that he was intoxicated. At the time of the shooting, the defendant, a Marine veteran, was employed as a police officer by the government of the Virgin Islands. He was not on duty when the homicide occurred nor was he in any way acting in his capacity as a policeman.

The defendant testified that he did not know Stevens, and that they bumped into each other as the defendant was entering the Beach Club through what is primarily an exit while Stevens was coming out. The defendant stated that he tried to apologize, but that Stevens insulted him with foul language. The defendant then said that he attempted to identify himself as a policeman, whereupon Stevens attacked him with a sharp object and the defendant protected himself by shooting Stevens. The defendant testified that he could not remember any details of the shooting except that he believed his life was in danger. After the shooting, the defendant placed the gun by the body, handcuffed himself and asked to be taken to the Fort.[1] He was driven there by two friends named Watkins and Callender, but he entered the Fort alone. When he presented himself at the front desk, he told Lieutenant Norman that a man had tried to cut him and that he, the defendant, shot him. Lieutenant Norman testified that certain parts of the defendant's tee shirt were torn and that he had scratches on his shoulder and chest. The defendant was then taken to a local hospital where he was treated for "multiple superficial abrasions and lacerations of the left shoulder, chest and back."

---

[1] The Fort is the name of the local prison.

While the defendant's story might be persuasive standing alone, the prosecution in this case presented a very different view of the facts surrounding the homicide.

One government witness, Louis Morales, testified that just prior to the shooting the defendant was "sitting on the left front fender" of Morales' Volkswagen which was parked in front of a door at the Beach Club. Morales was standing just to the left of his Volkswagen. Morales stated that he observed the defendant draw a pistol and shoot Keith Stevens, whom Morales knew, as Stevens was emerging from the Beach Club eating a chicken leg. Morales testified that the defendant fired two shots into Stevens, that Stevens leaned up against a pole, that the defendant shot Stevens again, that Stevens fell to the ground, that the defendant shot him twice more, paused, and then shot him again.

A second government witness, Yvonne Warner, was sitting in the front seat of Morales' Volkswagen when the shooting took place. She testified that she heard two or three firecracker-like noises, and that she then saw the defendant with a gun firing at Stevens who was on the ground. Miss Warner said that she saw the defendant sitting on the front fender of the Volkswagen, but it is unclear from her testimony whether this observation was made before or during the shooting. Miss Warner also stated that she did not see the defendant and Stevens engage in any conversation prior to the shooting.

A third person who witnessed the homicide was Michael Springer, a line dispatcher for the local Power Authority, who was attending a dance at the Beach Club. Springer testified that he was standing outside the Beach Club when he heard a shot, saw Stevens fall to the ground, and then saw the defendant fire two or three more shots at Stevens. Springer also said that the defendant fired at least one shot while sitting or leaning on the fender of a car.

The only witness who observed any contact between the defendant and Stevens was a Mrs. Eleanor Wallace. She testified that as she was leaving the Beach Club around 4:30 a.m., she saw the two men standing in the doorway, and she overheard one of them say, "I said you brushed on me," or something to that effect. She walked on toward a parking lot, and about *two minutes later* heard what she thought was a shot.

Although the defendant claims that he was cut and that his shirt was torn by Stevens, nobody noticed this until the defendant presented himself to Lieutenant Norman at the Fort. Instead, several witnesses described his physical appearance after the shooting, and all denied seeing any torn shirt or injuries to the body. Even the two men who drove the defendant to the Fort, but who dropped him off at the front gate and let him enter by himself, stated that they had not seen any blood or other sign of injury. In addition, another witness, Enard F. Frett, testified that after the shooting he heard the defendant ask a police officer named "Cornel" if he had "anything sharp." Cornel allegedly replied that the only sharp thing which he had was his sunglasses. Based upon all this evidence, the government contended that the defendant was not cut by Stevens but rather that the defendant inflicted his own wounds before turning himself in.

Title 14 V.I.C. §§ 921 and 922 defines the crime of murder as follows:

"§ 921. Murder defined

"Murder is the unlawful killing of a human being with malice aforethought.

"§ 922. First and second degree murder defined.

"(a) All murder which—

(1) is perpetrated by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing; or

(2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem— is murder in the first degree.

"(b) All other kinds of murder are murder in the second degree."

On this appeal, the defendant contends that the evidence is insufficient to sustain a verdict of first degree murder and that the trial court erred in denying his motion for a judgment of acquittal on this charge. Specifically, the defendant argues that the government did not prove that the killing was willful, deliberate and premeditated. He also claims that § 922(a)(1) requires, "as an essential element of first degree murder, substantially more reflection, that is, more understanding and comprehension of the character of the act, than the mere amount of thought necessary to form an intention to kill."[2] We cannot agree with any of these statements.

 The pertinent principles of Virgin Island law with respect to the elements of willfulness, deliberation and premeditation were recently set forth by Judge Maris in Government of the Virgin Islands v. Lake, 362 F.2d 770, 776 (3rd Cir. 1966), as follows:

"To premeditate a killing is to conceive the design or plan to kill. State v. Anderson, 1961, 35 N.J. 472, 173 A.2d 377, 389–390. A deliberate killing is one which has been planned and reflected upon by the accused and is committed in a cool state of the blood, not in sudden passion engendered by just cause of provocation. State v. Roedl, 1945, 107 Utah 538, 155 P.2d 741, 749. It is not required, however, that the accused shall have brooded over his plan to kill or entertained it for any considerable period of time. *Although the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill.* State v. Hammonds, 1939, 216 N.C. 67, 3 S.E.2d 439, 445; Keenan v. Commonwealth, 1863, 44 Pa. 55, 56–57. See, also Bullock v. United States, 1941, 74 App.

---

[2] Brief for defendant-appellant at 13–14.

D.C. 220, 122 F.2d 213, 214; 1 Wharton's Criminal Law and Procedure (1957) §§ 267, 268; 40 C.J.S. Homicide § 33.

"The defendant argues that the record is barren of any affirmative proof of premeditation on his part. It is true that there is no direct proof of the defendant's mental processes in this regard. But since these are wholly subjective it is seldom possible to prove them directly. If premeditation is found it must ordinarily be inferred from the objective facts. Every sane man is presumed to intend all the natural and probable consequences flowing from his deliberate acts. Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. *Accordingly, if one voluntarily does an act, the direct and natural tendency of which is to destroy another's life, it may fairly be inferred, in the absence of evidence to the contrary, that the destruction of that other's life was intended.*" (Emphasis added).

██ Considering this inference in the light of the evidence presented by both sides,[3] we believe that the district court correctly denied defendant's motion for a judgment of acquittal on the first degree murder charge. The defendant argues that the record contains no proof of premeditation and deliberation on his part, and that his testimony and injuries successfully rebut any inference against him. We do not think so. The defendant's testimony that he was cut by Stevens stands alone and uncorroborated. Similarly, the defendant produced no witnesses to testify that his shirt was torn or that he was cut and bleeding prior to the time that he gave himself up at the Fort. On the other hand, the government produced an eyewitness, Louis Morales, who said that he saw the defendant, who was sitting on the front of Morales' car, draw his pistol and shoot Stevens six times as he came out the door of the Beach Club. In addition, several witnesses described the defendant's physical appearance after the shooting, and

---

[3] In reviewing whether or not the evidence is sufficient to support a conviction, it is fundamental that we must view the evidence in the light most favorable to the government. E.g., United States v. Miles, No. 71-1465 (3d Cir. September 29, 1972); United States v. Hamilton, 457 F.2d 95 (3d Cir. 1972); United States v. De Cavalcante, 440 F.2d 1264 (3d Cir. 1971).

all denied seeing any torn shirt or bodily injuries. With this background, and in view of Enard Frett's testimony that he overheard the defendant ask a police officer named "Cornel" if he had anything sharp, we think that the jury could easily have concluded that the defendant's wounds were self-inflicted to make it appear that he acted in self-defense. Finally, with respect to the defendant's contention that the shooting occurred during the course of an argument, the only witness who observed any contact between the defendant and the deceased was Mrs. Wallace, but she stated that this was about two minutes before she heard any shots. Consequently, we believe that the jury could have found that the defendant and Stevens had had a quarrel and that the defendant was waiting to shoot Stevens when he emerged from the Beach Club. This would be consistent with the testimony that nobody saw a dispute between the defendant and the deceased immediately before the murder. In the absence of any significant evidence to support the defendant's story, and taking all the evidence into consideration, we cannot say that it does not support the jury's finding that the defendant was guilty of willful, deliberate and premeditated murder.[4]

██ The other contention raised by the defendant on this appeal is that the district court abused its discretion in not permitting him to conduct an in-court demonstration with handcuffs. The purpose of this proposed experiment was to show to the jury that the defendant could not reach the area of his wounds with his hands while handcuffed. The trial judge refused to allow the demonstration

---

[4] In deciding this question against the defendant, we have considered and reject this contention based upon § 201 of the 1937 Penal Code of Puerto Rico and these cases: People v. Perez, 84 P.R.R. 173 (1961); People v. Blanco, 77 P.R.R. 726 (1954); People v. Lassalle, 18 P.R.R. 410 (1912). We have also considered and reject his contention based on People v. Martinez, 38 Cal.2d 556, 241 P.2d 224 (1952), and People v. Holt, 25 Cal.2d 59, 153 P.2d 21 (1944), which were cited in oral argument, and People v. Howard, 211 Cal. 322, 295 P. 333, 336 (1930), which was cited in his brief.

on the ground that there would be no way to determine objectively whether or not the defendant was making a good faith effort to reach as far back as he could. The trial judge has considerable discretion in deciding whether or not to permit an experiment in the presence of the jury, and we find no abuse of discretion here.[5] The jury saw the defendant and the location of his wounds, and from that they could reasonably determine whether or not they were self-inflicted.

For the reasons stated, the judgment of the district court of the Virgin Islands will be affirmed.

---

[5] It should be noted that the trial judge had previously refused to permit the prosecution to conduct a similar experiment with Lieutenant Norman which was designed to show that the defendant could reach the injured areas of his body while handcuffed.