GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

v.

GLEN PETERSEN, Appellant

No. 74-1272

United States Court of Appeals

Third Circuit

Argued December 3, 1974

Filed January 16, 1975

FREDERICK D. ROSENBERG, ESQ. (BAILEY, WOOD & ROSEN-
BERG), St. Thomas, V.I., *for appellant*

JULIO A. BRADY, ESQ., United States Attorney; ISHMAEL
A. MEYERS, ESQ., Assistant United States Attorney, St.
Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, VAN DUSEN and ROSENN,
*Circuit Judges*

OPINION OF THE COURT

ROSENN, *Circuit Judge*

Defendant, Glen Petersen, was tried to a jury and con-
victed of murder in the first degree, in violation of 14

V.I.C. § 922, and assault in the first degree, in violation of 14 V.I.C. § 295(1). He was sentenced to concurrent terms of life and fifteen years imprisonment respectively. He appeals, contending that the evidence was insufficient to convict, and that a pre-trial photographic identification by a witness who had failed to make an in-court identification was improperly admitted at trial. We affirm.

The following facts are undisputed. Dr. Alfredo Rothenberg and his wife Barbara, residents of Puerto Rico, came to visit the Virgin Islands, arriving in St. Thomas on January 12, 1974. At about 7:30 P.M. the next evening, the couple left their hotel to go out for dinner. While waiting for a taxi, they met Malvin Hendrickson, who, accompanied by his brother, was also looking for transportation. As they were attempting to flag a cab, two men came across the street and stood at some distance to the side and behind a pumphouse nearby. Suddenly one of the two men approached the waiting group, mumbled indistinctly, and then started firing a handgun, the bullets striking both Dr. and Mrs. Rothenberg. Dr. Rothenberg succumbed to his wounds the next day.

At dispute in this case is the identity of the man who did the shooting. The Government produced three eyewitnesses, each of whose testimony is attacked by the defendant.

Malvin Hendrickson, who was waiting with the Rothenbergs, testified that "two guys come across the street and one guy passes closer to me," whom Hendrickson knew, although not by name, having given the man rides on several occasions. Hendrickson then testified that the gunman ran toward the group, jumped between the Rothenbergs and himself, and fired the fatal shots. When asked to identify the assailant, Hendrickson chose Petersen from among a group of young men of similar general appearance sitting

in the back of the courtroom, where, with the permission of the court, Petersen was allowed to sit.

On cross-examination, the witness denied having been a police informer, but admitted the fact upon examination by the court. Hendrickson also admitted that he had identified Petersen as the assailant only from a second photographic display after he had been unable to make an identification from an initial display. He revealed that, while driving around the area of the crime with the police in an attempt to find the gunman, he had identified another person who "look[ed] like him." That person turned out to be the defendant's brother, Willie Boe Petersen. Hendrickson was positive that the gunman wore a straw hat pulled down over the face, a dungaree jacket and pants, and construction boots.

The Government also presented testimony from Carl Petersen, no relation to the defendant, who was sitting on the railing of the porch of his home about twenty to thirty feet away when the shooting occurred. Carl testified that two boys came across the street, that they stopped about twenty feet from the porch, and that the assailant stared at him for about five minutes before walking over and shooting the Rothenbergs. Carl stated that he knew the defendant by sight prior to the shooting as the brother of Willie Boe Petersen, a former classmate. The witness then identified the defendant as the assailant from among those sitting in the back of the courtroom.

A vigorous effort was made on cross-examination to impugn Carl's ability to see the commission of the crime because trees and shrubbery through which he could not see separated him from where the two men were standing. The witness also acknowledged that it was dark at the time of the shooting, and that the nearest lights were on the side of the street opposite his vantage point. After first stating he saw the assailant holding a gun, he then admitted that he

saw no gun although he did see the assailant shoot Dr. Rothenberg in the stomach. Carl described the gunman as wearing a yellow wool hat and sneakers.

In connection with Carl's testimony, the jury later viewed the scene of the murder. Although the view was taken in the daylight, the jury was able to see the railing upon which Carl was sitting, the shrubbery and trees in front of the porch, and the spot where the Rothenbergs were standing.

The Government also put Mrs. Rothenberg on the stand. She recalled having looked at, and thought she could remember, the face of the assailant. However, the person whom she identified in the back of the courtroom as her assailant was actually the defendant's brother. Mrs. Rothenberg was recalled the next day, and over objection of defense counsel, testified that two days earlier she had chosen a photograph of the defendant as her assailant. Due to her inability to continue because of emotional distress, counsel stipulated that she stated at the time, "I think this is the face but I'm not positive." The photograph was admitted into evidence.

The final witness to whose testimony we shall refer is Detective Noel Martin who investigated the crime. Martin testified that the defendant had left for Tortola, British Virgin Islands, on January 15, and overstayed the period of time for which he was admitted as a visitor. Cross-examination revealed that Detective Martin had obtained an eyewitness identification from one Otis Rieara, who in a statement given on January 24 did not implicate Petersen but who, upon being taken to the police station, made a second statement implicating the defendant. Rieara did not testify at trial.

■ The standard to be used in judging the sufficiency of the evidence is whether the jury was justified in concluding beyond a reasonable doubt that the evidence, when viewed

in the light most favorable to the Government, was consistent with defendant's guilt. United States v. Ducker, 491 F.2d 1190 (5th Cir. 1974); Government of the Virgin Islands v. Lanclos, 477 F.2d 603 (3d Cir. 1973).

 Defendant alleges four major deficiencies in the evidence: (1) witness Hendrickson had made a mistaken out-of-court identification; (2) Mrs. Rothenberg, after making an uncertain pre-trial identification, chose in the courtroom defendant's brother as her assailant; (3) the description given by Hendrickson of the assailant's apparel and his approach to the Rothenbergs conflicted with the version given by Carl Petersen; and (4) witness Petersen's story was inherently unreliable because shrubbery and trees obscured his vision of the scene of the crime, the street was not well lit, and because no person about to commit a crime would stare for five minutes at a potential witness, especially a witness whom the defendant knew.[1]

 We are aware of the vagaries of eyewitness identification, see United States v. Wade, 388 U.S. 218 (1967), and that under our mandate in United States v. Barber, 442 F.2d 517 (3d Cir 1971), cert. denied sub nom., Mowbray v. United States, 404 U.S. 846 (1972), the testimony of the eyewitnesses must be received with caution and scrutinized with care.[2] We are also aware that the purpose behind a mo-

---

[1] Defendant also comments on several additional points: (a) Hendrickson's hostile attitude on the witness stand as evidenced by his initial refusal to admit to being a police informer; and (b) the failure of Carl Petersen to go directly to the police with his story and his admission that although he had seen the assailant point his hand at the victim's back, contrary to his testimony on direct examination, he actually had not seen a gun.

These points, going to the credibility of the witnesses, were for the jury to evaluate. We cannot say as a matter of law that the witnesses were unbelievable.

Finally, defendant notes the failure of the Government to put Otis Rieara and Malvin Hendrickson's brother on the witness stand. We simply note that the Government had no duty to produce every witness having some knowledge of the facts. United States v. Hines, 470 F.2d 225 (3d Cir. 1972), cert. denied, 410 U.S. 968 (1973).

[2] The Barber court approved the use of the following jury instruction:

The identification testimony may be treated by the jury as a statement of fact by the witness: (1) if the witness had the opportunity to observe

tion for acquittal[3] is that "jurors may not always be capable of applying strictly the instructions of the court, nor of basing their verdict entirely upon the evidence developed at trial." 8 J. Moore, Federal Practice ¶ 29.02 at 29–6 (2d ed. 1974). The trial judge, however, did properly instruct the jurors in accordance with Barber. We do not believe that the deficiencies alluded to were of such importance or the discrepancies between the testimony of certain witnesses of such significance that they could not be reconciled by reasonable jurors. It would be a rare case indeed if all the testimony of the prosecution were in perfect harmony.

The jury could have found that Hendrickson's pre-trial identification of the defendant's brother as the assailant was mistaken, and that his later in-court identification of the defendant was correct. This in-court identification had special significance because the defendant, with the permission of the court, sat in the back of the courtroom among men of similar general appearance. Likewise, Mrs. Rothenberg had identified the defendant in a photographic display, and the jury could have concluded that her identification in court of the defendant's brother, who also sat with defendant in the back of the courtroom, was caused by the severe emotional distress she was experiencing.[4]

The discrepancy between the descriptions of the assailant given by Hendrickson and Petersen are fairly minor. A

---

the accused; (2) if the witness is positive in his identification; (3) if the witness' identification testimony is not weakened by prior failure to identify or by prior inconsistent identification; and (4) if, after cross-examination, his testimony remains positive and unqualified. In the absence of any one of these four conditions, however, the jury will be admonished by the court that the witness' testimony as to identity must be received with caution and scrutinized with care. Id. at 528.

[3] At the close of the Government's case, defendant moved for a judgment of acquittal. When the motion was denied, he did not offer any evidence in his behalf.

[4] The trial was held only a month after the shooting and on the date of what would have been Dr. Rothenberg's birthday. In attempting to make an in-court identification, Mrs. Rothenberg had to be helped by the marshal from the witness stand. On occasion, she cried and the court asked the marshal to take her outside for some water.

straw hat, presumably yellow, may look like a yellow wool hat in the distance. High-topped colored sneakers may well appear similar to construction boots, particularly in darkness. One man's walk may be another man's trot.

Finally, Carl Petersen's account of the slaying was in the realm of credibility. The jury viewed the porch and railing on which he sat and the scene of the crime. The jury could see for itself whether Carl's view of the senseless slaying was obscured. While one about to commit a crime usually would not stare at a potential witness, such behavior was no more explicable than the pointless nature of the attack.

The jury reasonably could have concluded the evidence showed that (1) Malvin Hendrickson and Carl Petersen, eyewitnesses to the crime, both identified the defendant as the assailant from a number of men of similar general appearance sitting in the back of the courtroom; (2) Barbara Rothenberg, the surviving victim of the crime, identified the defendant from a photographic display as the person whom she believed to be her assailant; and (3) the defendant had fled St. Thomas two days after the crime. We believe that this is sufficient evidence for the jury to conclude beyond a reasonable doubt that Glen Petersen was the perpetrator of the crime.

■ Defendant also contends that the trial court erred in allowing Mrs. Rothenberg to testify about her identification of the defendant in a pre-trial photographic display, and in allowing the introduction of the photograph into evidence. Defendant argues that the admission of such evidence after the failure of Mrs. Rothenberg to identify in court the defendant as her assailant allowed the Government to impeach its own witness and was highly prejudicial. Under the circumstances of this case, the evidence was not used to impeach Mrs. Rothenberg. The Government did not attempt to discredit her testimony. Rather, the evidence

was introduced as independent proof of an identification of the assailant by the victim of the crime.

We are committed in this Circuit to admitting such evidence if its probative value outweighs any prejudicial effect. United States v. Gimelstob, 475 F.2d 157, 162 (3d Cir.), cert. denied, 414 U.S. 828 (1973); United States v. Hines, 470 F.2d 225, 225–28 (3d Cir. 1972), cert. denied, 410 U.S. 968 (1973). In both cases, we allowed reference to pre-trial photographic identifications to buttress in-court identifications over objections that such references would allow the jury to believe that the pre-trial identifications were from police mug shots and thus infer that the defendants had engaged in prior criminal activity. More importantly, in Hines we cited with approval People v. Gould, 54 Cal.2d 621, 7 Cal. Rptr. 273, 354 P.2d 865 (1960), in which the trial court admitted evidence of a photographic identification by a witness who could not identify the defendant at trial. Justice Traynor wrote:

Evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial, but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached, evidence of an extra-judicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. The failure of the witness to repeat the extra-judicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extra-judicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination.

354 P.2d at 867. We agree with the teaching of Gould. The photographic identification made by Mrs. Rothenberg had

definite probative value and properly was admissible as independent evidence.

The judgment of the district court will be affirmed.