## JOSE ALBERTO ROSA, Appellant
### v.
## GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

D.C. Crim. App. No. 2001/0068

District Court for the Virgin Islands

Division of St. Croix

March 11, 2004

G. LUZ A. JAMES, ESQ., St. Croix, U.S.V.I., *for Appellant*

MAUREEN PHELAN, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, U.S.V.I., *for Appellee*

FINCH, MOORE, and HODGE, *Judges*

## OPINION OF THE COURT

*Per curiam.*

Appellant Jose Alberto Rosa, ["Appellant," or "Rosa"] appeals his conviction for first-degree murder in violation of V.I. CODE ANN. tit. 14 § 922(a)(1) (1996 & Supp. 2003). The issue on appeal is whether the trial judge erred in instructing the jury that Appellant could be found guilty of first-degree murder based either on a finding that he intended to kill the victim or that he intended to do the victim serious bodily harm. We hold that the erroneous jury instruction on an essential element of the charged crime constitutes plain error, and, accordingly, reverse the judgment of the Territorial Court and vacate Rosa's conviction for first-degree murder.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

Rosa and co-defendant Victor Ramos ("Ramos") were charged pursuant to a criminal information with aiding and abetting each other to commit murder in the first degree and with carrying or using a dangerous weapon during a crime of violence in violation of section 992(a)(1) of Title 14 and section 2251(a)(2) of Title 14 respectively.

On the evening of November 5, 2000, at approximately 9:30 p.m., Rosa and his brother-in-law Ramos were riding together in Rosa's car on their way home from a beach party. According to testimony by the defendants at trial, a truck driven by George Glasgow ("Glasgow") was driving in front of them and had been weaving from side to side, when it stopped suddenly. Rosa stated that although he was not driving quickly, he did not have sufficient time to stop, and bumped into the back of Glasgow's truck. Rosa and Ramos further testified that when Rosa got out of his car to speak to Glasgow and provide him with contact

---

[1] Appellant also argues that the evidence was insufficient for the jury to find him guilty of first-degree murder. We need not reach the issue here, as the conviction is to be reversed on the grounds that the jury instruction constituted plain error.

information for insurance purposes, Glasgow hit Rosa in the face with a can of beer. Rosa stated that in response, he returned to the car and drove off, with Glasgow in pursuit. According to the defendants, a high-speed chase followed, during which they tried to elude Glasgow.

When they reached Estate Profit, Rosa stopped his car in front of Rancho Alegre and Glasgow also stopped his truck. According to Rosa, an altercation ensued, in which Glasgow got out of the car with a machete and used it to strike Ramos, who had gotten out of the car and gone to speak to Glasgow because his English was better than Rosa's. In response, Rosa pulled out a large 2x2 stick from his car and advanced toward Glasgow to try to speak to him, at which point Glasgow hit him with the machete. Rosa testified that after receiving several more blows with the machete, he began hitting Glasgow with the stick in order to protect himself. At that point Ramos had run across the street and picked up some bottles to throw at Glasgow. Ramos went back across the street to where the fight was taking place, and noticed that Glasgow had dropped the machete. Ramos testified that he picked it up and hit Glasgow with its flat side when Glasgow advanced toward him. Both defendants argued that their actions against Glasgow were necessary in self-defense.

At trial, the defendants' version of events leading up to their arrival at Estate Profit was not contradicted. However, Ramos admitted on cross-examination that he had lied extensively in his original statement to police. Two eyewitnesses, Gabriel Reyes and his wife, Glendalee Reyes, observed the fight in Estate Profit and testified to a different version of events from that of the defendants.

Gabriel and Glendalee Reyes and their son were driving through Estate Profit at approximately 9:45 on the night of November 5, 2000, when they saw Ramos throwing bottles from one side of the road and Rosa and Glasgow arguing on the other side. Gabriel Reyes stopped the car to keep it from getting hit with a bottle. He testified that he saw Rosa hit Glasgow with a stick, after which Glasgow ran to his truck to get a machete. Glasgow attempted to swing at Rosa, but Ramos had run to that side of the road and grabbed Glasgow, knocking the machete out of Glasgow's hand and picking it up himself. He also stated that Rosa continued to hit Glasgow with a stick and Ramos hit him with the machete, and that they were directing their blows to Glasgow's head and back. At some point Ramos stopped hitting Glasgow but Rosa continued

to hit him with the stick and he fell to the ground. According to their testimony, Rosa continued to hit Glasgow with the stick and Ramos kicked him. Glasgow attempted one more time to get up, but was knocked down again when Rosa continued to hit him. Reyes stated that Glasgow was no longer moving, and that Rosa hit him several more times on the head with the stick while he was lying still.

As a rebuttal witness, Glendalee Reyes corroborated her husband's testimony. Testimony was also presented during the Government's case-in-chief by Dr. William Fogarty, an expert witness who conducted the autopsy of the victim. He stated that Glasgow had a massive skull fracture, including a contusion to the cerebellum. Officer Richard White provided testimony that the stick Rosa was using was about two or three feet long.

At the close of the Government's case, Rosa moved for a judgment of acquittal, which the court denied. Prior to closing arguments, the Court asked the defendants' counsel if they had any objections to using the jury instructions provided by Ramos, which included language stating that the jury must find that the defendants either intended to kill Glasgow or intended to cause him serious bodily harm. On two occasions Rosa's counsel stated he did not object to them. After the instructions were presented to the jury, counsel for Rosa again stated on the record he had no objection to them.

On August 1, 2001, a jury found Rosa guilty of first-degree murder and possession of a dangerous weapon and found Ramos guilty of voluntary manslaughter and possession of a dangerous weapon. This appeal by Rosa followed.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ This Court has jurisdiction to review judgments and orders of the Territorial Court in criminal cases where the defendant has been convicted other than through a guilty plea. 4 V.I.C. § 33; Section 23A of the Revised Organic Act of 1954.[2] Where an objection to jury

---

[2] *See* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a. The complete Revised Organic Act is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2001), *reprinted in* V.I. CODE ANN., 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2001) (preceding V.I. CODE ANN. tit. 1).

instructions was not made at trial in accordance with FED. R. CRIM. P. 30, appellate review is for plain error only. FED. R. CRIM. P. 52(b). *Government of the Virgin Islands v. DuBois*, 25 V.I. 316, 323 (D.V.I. App. Div. 1990).

## B. Whether the Jury Instructions on First Degree Murder Were Erroneous

Appellant avers that the trial court erred in instructing the jury on the first-degree murder count.[3] At trial, the judge instructed the jury that in order to convict on the first-degree murder charge, they had to find that "... the defendant had an intent to kill or to inflict serious bodily harm against a human being ... ."[4] (Tr. Vol. III, p. 25) The Government concedes that the instruction was "probably erroneous." (Gov't's Br. at 8.)

---

[3] First and second degree murder are defined in 14 V.I.C. § 922: "(a) All murder which—

(1) is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing; or

(2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny—

is murder in the first degree.

(b) All other kinds of murder are murder in the second degree.

[4] The complete first-degree murder charge given to the jury was as follows:

Now, defendant is—defendants are charged in the first count of the amended information with a crime of Murder in the First degree, in violation of Title 14, Section 922(a)(1). Murder is the unlawful killing of a human being with malice aforethought. For murder to constitute murder in the first degree the additional elements of willfulness, deliberateness and premeditation must be established; therefore, murder in the first degree is the unlawful killing of a human being with malice aforethought, with willfulness, deliberateness and premeditation. Therefore, before you can find the defendants or any of the defendants guilty of the crime of murder in the first degree you must find that the Government has proven each of the following essential elements beyond a reasonable doubt; That the defendants knowingly and intentionally while aiding and abetting each other unlawfully killed a human being, in this case George Glasgow, that the defendants acted with malice aforethought. That the killing was willful, deliberate and premeditated. That the defendant did not act in self-defense and the defendant had an intent to kill or to inflict serious bodily harm against a human being and that these acts occurred on November the 5, 2000, on St. Croix, Virgin Islands. (Tr. Vol. III at 24-25.)

542

Murder itself is defined in 14 V.I.C. § 921: "Murder is the unlawful killing of a human being with malice aforethought."

 Under Virgin Islands law, a conviction for first-degree murder cannot lie unless the Government proves the unlawful killing was accompanied by a clear and deliberate intent to take life.[5] *Government of the Virgin Islands v. Lake*, 362 F.2d 770, 775-6, 5 V.I. 594, 605 (3d Cir. 1966). Possession of intent to kill is therefore an essential element of the crime of first-degree murder. The trial court thus erred when it instructed the jury that it could find the defendant guilty of first-degree murder based only on a finding of intent to inflict serious bodily harm.

The Government contends that because no objection to the instruction was raised at trial, and Appellant's counsel stated three times on the record that he did not object to proposed instructions, this Court should not notice the error. However, it is clear that this Court may notice an error absent a timely objection if it is plain error. FED. R. CRIM. P. 30(d), 52(b). FED. R. CRIM. P. 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We now consider whether the erroneous instruction constitutes plain error. Because Appellant raises the issue, our analysis will encompass an assessment of whether the erroneous jury instruction violates Appellant's due process rights, as he contends.

█ Plain errors are those that "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Young*, 470 U.S. 1, 16, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985). According to the Supreme Court, the plain error exception should [*11] be used sparingly. *United States v. Frady*, 456 U.S. 152, 163 n.14, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). Nonetheless, the plain error doctrine protects the integrity of the judicial process against erosion, and should be invoked when necessary to correct obvious injustices. *Frady* at 163.

██ Historically, courts in this jurisdiction have listed the following factors as germane to a plain error analysis: (1) whether the error was obvious, (2) the significance of the interest protected by the violated rule,

---

[5] Specifically, the *Lake* Court stated: "To be murder in the first degree, under our statute, the killing must be premeditated, except when done in the perpetration of certain felonies; that is to say, the unlawful killing must be accompanied with a deliberate and clear intent to take life." *Lake*, 362 F.2d at 775-76, 5 V.I. at 605-6 (quoting *People v. Howard*, 211 Cal. 322, 295 P. 333 (Cal. 1930)).

(3) the seriousness of the error in the particular case, and (4) the effect of the error on the reputation of the judicial proceedings. *Government of the Virgin Islands v. Smith*, 949 F.2d 677, 681 27 V.I. 332, 338 (3d Cir. 1991) (quoting *United States v. Thame*, 846 F.2d 200, 205 (3d Cir. 1988)); *Government of the Virgin Islands v. Mujahid*, 990 F.2d 111, 116 28 V.I. 284 (3d Cir. 1993). The Supreme Court, in delineating the test for plain error, used a similar set of factors.[6] *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *see also Johnson v. United States*, 520 U.S. 461, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997). To find plain error, the Court must find there was (1) error, (2) that was plain, and (3) that affects substantial rights. *Olano*, 507 U.S. at 732. Only if those three criteria are met may an appellate court exercise discretion to correct the forfeited error, and then only where it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L. Ed. 555 (1936)).

Where an error is of constitutional dimension, there is an increased likelihood that it will necessitate reversal. *Thame*, 846 F.2d at 207. However, it is not the case that every error with constitutional implications is plain error. *Id.*

### 1. Whether Error Affected Appellant's Due Process Rights

Appellant argues that in this case, the erroneous jury instruction was substantial enough to abrogate his due process rights under the Fourteenth Amendment to the United States Constitution. See U.S. CONST. AMEND. XIV § 1. Under a Rule 52(b) analysis, the constitutional nature of an error is not dispositive; therefore we are not required to address the issue in this instance. *Smith*, 949 F.2d at 683. Nonetheless, we will do so, given that it was raised by Appellant and that the Third Circuit has noted that errors of constitutional proportions do elevate the likelihood that an error was prejudicial. *Thame* at 207.

The Supreme Court has noted that in determining the constitutional validity of a jury instruction, the individual instruction

---

[6] The Third Circuit Court of Appeals has adopted the plain error test as set forth in *Olano*. See *United States v. West Indies Transport, Inc.*, 127 F.3d 299, 305, 37 V.I. 579 (3d Cir. 1997). *See also Brown v. Government of the Virgin Islands*, 40 V.I. 141 (D.V.I. 1998).

must not be viewed as discrete. *Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973) (finding no due process violation where improper jury instruction was accompanied by curative instruction). Instead, it must be considered within the context of the overall charge. *Id.* at 147. We therefore consider the improper first degree murder instruction within the context of the jury instructions as a whole.

As a preliminary matter, we note that according to *Cupp,* incorrect jury instructions may be corrected with a curative instruction. *Cupp* at 147. As our holding in *Brown* states, "[a]ny harm caused by the trial judge's comments or questioning of witnesses was remedied by the curative instruction given to the jury." *Brown, supra* note 5, at 4 (citing *United States v. Olgin*, 745 F.2d 263, 269 (3d Cir. 1984)). In order to effect a cure, the supplementary instruction must address the error in the original instruction, and provide the proper instruction in its stead. *Olgin* at 269. In this case, the record reveals no such direct cure.

After presenting the erroneous instruction to the jury, the trial judge went on to define the individual elements of first degree murder. The jury heard the following definition of malice aforethought:

"an intent at the time of killing willfully to take the life of a human being or an intent willfully to act in callus [sic] and wanton disregard of consequences [sic] of human life." (Tr. Vol. III at 26.)

The definition provided for premeditation and deliberation was, in pertinent part, as follows:

Any interval of time between the forming of the specific intent to kill and that [sic] execution of that intent which is of sufficient duration for the accused to be fully conscious and mindful of what he intended willfully to set about to do is sufficient to justify a finding of premeditation. (Tr. Vol. III at 27.)

While both of these instructions emphasize intent to kill as components of the required elements of malice and premeditation, neither defines intent to kill as an essential element in and of itself, a requirement according to the holding of *Lake* and its progeny. This omission has serious negative consequences for Appellant's due process rights that the correct malice and premeditation instructions cannot compensate for.

545

The malice definition is stated disjunctively, therefore malice could be found where there was an intent to willfully act with callous disregard for human life rather than an intent to kill. Furthermore, even if the jury were to have found that the government proved malice based on intent to kill, malice aforethought is not the defining element of first degree murder because it is also an element of second degree murder. *Government of the Virgin Islands v. Sampson*, 94 F. Supp. 2d 639, 644, 42 V.I. 247, 253 (D.V.I. App. Div. 2000) (stating that "Section 922 retains the common law distinction between second degree murder, which requires a killing with malice aforethought, and first degree murder, which in addition to malice aforethought requires a killing with premeditation and deliberation").

The premeditation definition, by contrast, did focus solely on intent to kill. However, the premeditation instruction was insufficient by itself to protect Rosa's due process rights because it is only one of several required elements. We note that even with correct instructions on malice aforethought and premeditation, the following scenario could easily ensue. The jury, in assessing whether the defendant acted with malice aforethought, could conclude that he did, because he possessed the intent willfully to act in callous and wanton disregard of consequences of human life, the second option presented in the malice instruction. Next, they could consider whether the crime was premeditated and decide that it was. Finally, believing they could convict for first degree murder if the defendant intended to cause the victim serious bodily injury rather than to kill the victim, they would assess the intent element. The evidence is substantial that the defendant did inflict serious bodily injury on the victim, so the jury could then conclude that the intent element had been proven. As a result, the jury could then find the defendant guilty of first-degree murder. The defendant thus could have been convicted of the crime at a significantly lower burden of proof threshold than the law requires.

■ In *Smith v. Horn*, 120 F.3d 400 (3d Cir. 1997), a habeas case, the petitioner had been convicted of first-degree murder.[7] The Third Circuit stated that "[a] jury instruction that omits or materially misdescribes an essential element of an offense as defined by state law relieves the state

---

[7] Smith was prosecuted in the Commonwealth of Pennsylvania, whose murder statute requires proof of specific intent to kill in order to convict a defendant of first-degree murder. *Smith*, 120 F.3d at 416.

of its obligation to prove facts constituting every element of the offense beyond a reasonable doubt, thereby violating the defendant's federal due process rights." *Id.* at 415. It is clear that the jury instruction in this case misdescribed the essential element of intent to kill. Viewed in the aggregate, then, the instructions do reveal an error of constitutional proportions. The law as it applied specifically to the element of intent to kill was not stated correctly. As the *Smith* Court noted:

> The jury was instructed that Smith could be found guilty of first-degree murder even if it did not find beyond a reasonable doubt that Smith intended for a killing to take place. The instruction thus relieved the Commonwealth of the burden of proving beyond a reasonable doubt facts necessary to constitute every element of the offense ... The instruction therefore constituted error pursuant to the Due Process Clause of the Fourteenth Amendment. 120 F.3d at 416.

The erroneous jury instruction in this case had a similar burden-shifting effect, and we therefore conclude that the first degree murder instruction violated Appellant's due process rights.

## 2. Whether the Error Constitutes Plain Error

 Establishing the presence of constitutional error does not end the plain error inquiry. According to FED. R. CRIM. P. 52(b), this Court can only invoke the plain error exception if the forfeited error affected a substantial right in such a way as to undermine the fundamental fairness of the trial and produce an outcome contrary to the interests of justice. The *Olano* test provides a framework for determining whether an error has had that level of impact.

That there was an error at the trial level is not in dispute, thus the first part of *Olano* requiring existence of an error, is satisfied. *Olano*, 507 U.S. at 732. The second prong mandates that the error be "plain," a term defined as being clear or obvious under current law. *Id.* at 734. The Government concedes that the error was plain under this test; Virgin Islands case law is clear that intent to kill is an essential element of first-degree murder. (Gov't's Br. at 16.) Therefore, the second part is also satisfied.

The third part of *Olano* requires that an error affect "substantial rights." *Id.* The Government once again concedes that in this instance,

the right in question is substantial. (Gov't's Br. at 16.) However, the determinative factor is not simply the importance of the right itself, which is what the government appears to be conceding. Rather, *Olano* focuses on whether the error in question was prejudicial, meaning that it must have affected the outcome of the proceedings at the trial level. *Id.* at 734.

In this case, we find it difficult to believe that the error could not have impacted the jury's consideration of the case. The instruction provided two options for assessing the element of intent. If the jury found the government had proven beyond a reasonable doubt that Rosa intended to inflict serious bodily injury, the government had satisfied its burden with respect to that element. Alternatively, the element could be proven if the government proved intent to kill. Jurors heard eyewitness testimony that Rosa hit the victim so many times with a 2x2 stick, which was fitted with a grip, that Glasgow had a massive skull injury. The testimony indicated that a significant portion of these blows were directed at Glasgow after he had fallen to the ground and appeared unconscious. If the jury were in any way uncertain about whether intent to kill had been proven, faced with the breadth of evidence showing the harm that was done to Glasgow, it would have been not only easy but logical to determine that the Government had met its burden by proving intent to cause serious bodily injury. We find further evidence that the error influenced the jury's deliberations in such a way as to prejudice Rosa by contrasting the jury's verdict in Ramos' case, in which they found him guilty of the lesser crime of voluntary manslaughter.[8] We conclude that the instruction did have an impact on the outcome, and thus affected a substantial right.

Ultimately, the Government argues that the Court should not exercise its discretion to notice the error at trial because there is no reason for the Court to find that it "seriously affected the fairness, integrity, or public reputation of judicial proceedings," the fourth component of plain error analysis under *Olano*. *Olano*, 507 U.S. at 736. The Government's argument is twofold. It contends first that, given the volume and nature of evidence at trial against Rosa, the jury could not reasonably have concluded he did not intend to kill Glasgow. Second, the Government maintains the jury instructions were in essence correct, containing only a "single slight error" (Gov't's Br. at 16.) The Government states: "Given

---

[8] Appellant raises this discrepancy in his brief.

this evidence and the essentially correct instructions, there was no substantial likelihood of a miscarriage of justice." (Gov't's Br. at 17.) We are not persuaded by either aspect of this argument.

Sheer volume of evidence does not in and of itself offset an incorrect jury instruction.[9] The Third Circuit has held that evidence can be insufficient to overcome an erroneous jury instruction even where it gives rise to inferences more easily drawn than in this case. In *United States v. Xavier*, 2 F.3d 1281, 1287, 29 V.I. 279 (3d Cir. 1993), the Court found plain error where the jury instruction failed to include the element of knowledge of a co-defendant's status as a felon. In that case, the co-defendants were brothers, had lived together for several years, and the defendant whose conviction was being challenged testified at trial that he knew his brother had been in jail. *Id.* at 1287, 29 V.I. 287. Despite the seeming obviousness that Xavier knew his brother was a felon, the Court held that the evidence, while arguably showing guilt by a preponderance standard, was not so compelling as to meet a beyond a reasonable doubt standard.[10] The evidence in this case suffers from similar limitations.

In the instant case, the Government argues it was impossible for the jury not to conclude Appellant intended to kill the victim because of the nature of the evidence at trial, which showed that Glasgow was hit multiple times, that some of the blows were directed at his head, and that he was attacked after he had fallen to the ground. This argument is not controlling in a first-degree murder case, which will always involve a certain amount of graphic evidence, and which always requires the Government to prove intent to kill. In *Smith,* the Court found plain error where the evidence against Smith indicated he fired more than one shot

---

[9] In *Johnson,* on which the Government relies for its argument, the Supreme Court found the materiality of the false statements by the individual on trial for perjury "overwhelming", and determined that not submitting the issue of materiality directly to the jury did not constitute plain error. *Johnson,* 520 U.S. at 470. The facts of that case are distinguishable from this one insofar as materiality was uncontroverted at trial and on appeal.

[10] The Third Circuit held: "While, as noted, a jury could have inferred, on a *preponderance* of the evidence presented at trial, *see* note 5, *supra,* that Xavier knew his brother was an ex-felon, that evidence is not so conclusive as to have assured Xavier's due process right to 'proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [a defendant] is charged'." *Xavier,* 2 F.3d at 1287, 29 V.I. 287-88 (quoting *In re Winship,* 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970)).

at the victim, and one witness testified Smith had stated "I am going to kill you." 949 F.2d at 679.

The other portion of the Government's argument is that the jury instructions were essentially correct. In the preceding discussion of Appellant's due process rights, we assessed the instruction on intent in the context of the instructions on the other elements. The Government asks us to extend that assessment here, arguing that intent to inflict serious bodily harm was mentioned once, while jurors were told three times that the killings had to be willful, deliberate and premeditated, and that all of the attorneys referred only to intent to kill in their closing arguments, thus mitigating the erroneous instruction.

In its opening statement, the Government described the killing of the victim, saying that the defendants intended to take his life. (Tr. Vol. I at 47.) In the opening statement by counsel for Appellant's co-defendant at trial, he referred directly to the intent to kill. At the end of the Government's case, Appellant moved to dismiss the first-degree murder charge, and his counsel stated there was no evidence presented that Rosa planned to kill the victim. (Tr. Vol. II at 50.) In its response to this motion, the Government again referred to "the intent, the forming, the intent to take the life of Mr. Glasgow ...". (Tr. Vol. II at 53.) On direct examination of Ramos, his attorney asked directly whether he intended to kill Glasgow, and did not ask whether he intended to cause him serious bodily harm. In the Government's closing argument it referred to the intent to take the life of a human being. (Tr. Vol. II at 174.) Counsel for Ramos referred to intent to kill in that closing statement. (Tr. Vol. II at 202.) The intent to cause serious bodily harm is not mentioned anywhere else.

The Government would have us reduce a criminal defendants rights to nothing more than a simple mathematical expression; as long as the number of times the correct elements are referred to is greater than the number of times the jury is improperly instructed on the elements of a given crime, there is no plain error. We cannot agree. We are not concerned with a mere tallying up of the total references; instead, we focus on the role each reference plays. For example, statements attorneys make in opening and closing arguments, which are not evidence, cannot be elevated over the jury instructions themselves.

We therefore conclude that the fourth condition necessary to find plain error under *Olano* is satisfied. The error in this instance is sufficiently serious that it affects the judicial proceedings in a way that jeopardizes

their fairness, and by association, their integrity and public reputation. In *Smith*, the Third Circuit noted that it had found plain error in cases where there was far less at stake than a criminal defendant's right to a fair trial. 949 F.2d 683 (citing *Beardshall v. Minuteman Press*, 664 F.2d 23, 26-27 (3d Cir. 1981) (finding plain error based on erroneous jury instruction in civil fraud case)).

For more than three decades, this jurisdiction has expressed its intolerance for criminal jury instructions that do not make clear the government's burden to prove each and every essential element of a given crime beyond a reasonable doubt. In *United States v. Small*, 472 F.2d 818 (3d Cir. 1972), the Court reversed a conviction on a conspiracy charge because the jury instructions failed to tell the jury it had to find that an overt act was committed in order to convict the defendant of conspiracy. *Small*, 472 F.2d at 819. Commission of an overt act by one of the co-conspirators was an essential element of the crime of conspiracy under Pennsylvania law. *Id.* The *Small* Court held: "The failure to instruct on overt acts cannot be assumed to have been unimportant to defendant's due process rights ... Looking at the instructions as a whole, therefore, we find plain error was committed in the failure of the court to instruct on all necessary elements of the crime of conspiracy." *Id.* at 819-20.

We therefore hold that the erroneous jury instruction constituted plain error. In a criminal trial, the burden of proof is on the Government, and that burden must be met with respect to every essential element of the crime charged. So fundamental is this precept, it may not be diluted. While a defective jury instruction may be cured by a direct supplemental instruction acknowledging the error and presenting a correct statement of the law, no such instruction was given in this case. Nor does mathematical majority save the instruction. The phrase "intent to kill," was indeed utilized more times independent of the phrase "intent to do serious bodily harm" than in conjunction with it; however, the instance in which they were presented as alternative options was the very instance in which the government's burden of proof on the essential element of intent was being defined. Finally, the scales cannot be weighted against a defendant solely because some significant evidence exists against him or her.

## III. CONCLUSION

▮ Because the erroneous jury instruction describing the element of intent to kill violated Appellant's due process right to a fair trial and constituted plain error, we reverse the conviction for first-degree murder.