**JOSE ALBERTO ROSA, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2001/068

District Court of the Virgin Islands

Division of St. Croix

September 22, 2006

G. LUZ A. JAMES, ESQ., St. Croix, U.S.V.I., *For Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *For Appellee.*

GOMEZ, *Chief Judge, District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and HODGE, *Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*

## MEMORANDUM OPINION

(September 22, 2006)

Jose Alberto Rosa ("Rosa" or "appellant") initially appealed his conviction of murder in the first degree and possession of a dangerous weapon during a crime of violence, challenging the trial court's jury instruction on the essential elements for the charge and the sufficiency of the evidence on the element of intent. We reversed, finding the jury instruction to be plain error, and declined to reach the second question. On appeal by the government, the Third Circuit reversed our determination and remanded for consideration of the appellant's arguments surrounding the sufficiency of the evidence. The sole issue now before us today is whether there was sufficient evidence on the element of premeditation to sustain a conviction of murder first degree under V.I. CODE ANN. tit. 14, § 922(a).

For the reasons more fully stated below, we find the evidence at trial sufficient to withstand the guilty verdict and, therefore, affirm the appellant's criminal conviction.

## I. STATEMENT OF THE FACTS & PROCEDURAL POSTURE

The facts of this case are previously set out in our earlier opinion in *Rosa v. Virgin Islands*, 307 F. Supp. 2d 695, 45 V.I. 537 (D.V.I. App. Div. 2004) and the court of appeals' opinion, *Virgin Islands v. Rosa*, 399 F.3d 283, 288 (3d Cir. 2005). Therefore, we will not detail them again here except as relevant to the discussion below.

Rosa was charged and convicted of beating George Glasgow ("Glasgow") to death with a 2x4 piece of wood.[1] The incident was the culmination of an apparent traffic accident and dispute that began at the Frederiksted pool and led to the Estate Profit Area where Glasgow stopped his truck behind Rosa and his brother-in-law, Victor Ramos ("Ramos") and continued the dispute.

According to the trial evidence, Rosa struck Glasgow with the board during the altercation, as Ramos threw bottles from across the street. According to witnesses, Rosa's attack prompted Glasgow to retrieve a machete from his truck. However, Rosa struck the machete from Glasgow's hands, and it was retrieved by Ramos, who then used the flat side to beat Glasgow.

Glasgow then suffered a prolonged beating at the hands of the two men, Rosa striking repeatedly with the large stick and Ramos striking with the flat side of the machete and later kicking him about the body as he fell to the ground. It was also established at trial that Rosa continued his beating, even after Ramos stopped.

At trial the defense theory was that Glasgow had approached the two men wielding the machete, and that Rosa had struck him in self defense. However, two witnesses to the incident, Gabriel Reyes ("Gabriel") and his wife, Glendalee Reyes ("Glendalee"), testified for the government that Rosa was the initial aggressor and continually beat Glasgow with extreme force to the head area with the 2x4 wood, even after Glasgow was obviously disabled. Glasgow died at the scene from his injuries.

Medical testimony established that as a result of the beating, Glasgow suffered severe and extensive trauma to the head and back areas, including a massive fracture of the skull, which medical testimony explained meant that "bones are extensively broken instead of having one little crack." He also suffered hemorrhaging into the brain cavity, bruising of the brain, scalp lacerations, fracture of the left forearm, and abrasions to his back, shoulders, body area and arm.

---

[1] Rosa's co-defendant, Victor Ramos, was convicted of voluntary manslaughter and possession of a dangerous weapon.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

We may properly exercise jurisdiction to review the final judgment in this criminal matter. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction provisions); Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[2]

We accord plenary review to the appellant's challenges to the sufficiency of the evidence to sustain his conviction of murder in the first degree. *Virgin Islands v. Sampson,* 94 F. Supp. 2d 639, 643, 42 V.I. 247 (D.V.I. App. Div. 2000). In that regard, we must determine whether the evidence, and all reasonable inferences which may be drawn therefrom, viewed in the light most favorable to the government, is such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt of every element of the offense. *See id.; see also, Abiff v. Gov't of V.I.,* 313 F. Supp. 2d 509, 511 (D.V.I. App. Div. 2004). We may disturb the jury's verdict on these grounds "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." *Abiff,* 313 F. Supp. 2d at 511; *see also, United States v. Casper,* 956 F.2d 416, 421 (3d Cir. 1992) ("Appellate reversal on the grounds of insufficient evidence should be confined to cases where the failure of the prosecution is clear.").

### B. Proof of Premeditation

Murder is defined in the Virgin Islands as "the unlawful killing of a human being with malice aforethought." V.I. CODE ANN. tit. 14, § 921. A murder that is willful, deliberate and premeditated constitutes murder in the first degree. 14 V.I.C. § 922(a). Rosa argues his conviction under section 922(a) cannot be sustained because the government failed to produce evidence that he bore the essential element of premeditation or deliberate intent to kill under section 922. We must disagree.

---

[2] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

 The element of premeditation requires proof that, prior to the killing, the appellant "conceive[d] the design or plan to kill," *Sampson*, 94 F. Supp. 2d at 644; *see also, Government of Virgin Islands v. Lake*, 362 F.2d 770, 776, 5 V.I. 594 (3d Cir. 1966). It is "one which has been planned and reflected upon by the accused and is committed in a cool state of the blood, not in sudden passion engendered by just cause of provocation." *Lake*, 362 F.2d at 776. Although a prior design to kill and some prior reflection must be shown, no considerable period of time is necessary to establish premeditation. *Sampson*, 94 F. Supp. 2d at 644. Rather, "a brief moment of thought may be sufficient to form a fixed, deliberate design to kill," and it is not required that the "accused shall have brooded over his plan to kill or entertained it for any considerable period of time." *Id.; see also, Lake*, 362 F.2d at 776; *Virgin Islands v. Charles*, 72 F.3d 401, 410, 33 V.I. 361 (3d Cir. 1995).

 The law recognizes that premeditation and issues of intent, being mental states, can seldom be proven with direct evidence and must necessarily be inferred from the objective facts of the case, to include the manner in which the injuries were inflicted, its tendency to result in death, and the subsequent conduct of the accused. *See Government of Virgin Islands v. Roldan*, 612 F.2d 775, 16 V.I. 683 (3d Cir. 1979) (noting factors considered by *Lake* and other jurisdictions; also noting that jury may infer premeditation from the use of a deadly weapon, particularly where such weapon is used on an unarmed victim), *cert. denied*, 446 U.S. 920, 100 S. Ct. 1857, 64 L. Ed. 2d 275 (1980); *see also Government of Virgin Islands v. Lanclos*, 477 F.2d 603, 9 V.I. 579 (3d Cir. 1973) ("If premeditation is found it must ordinarily be inferred from the objective facts."). Accordingly, this circuit has recognized that, "if one voluntarily does an act, the direct and natural tendency of which is to destroy another's life, it may fairly be inferred, in the absence of evidence to the contrary, that the destruction of that other's life was intended." *Lake*, 362 F.2d at 776 (*noting that* "every sane man is presumed to intend all the natural and probable consequences flowing from his deliberate acts") (citing *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896)).

In this instance, the evidence at trial was that the appellant repeatedly struck Glasgow to the head with a 2x4 board, even after Glasgow was rendered defenseless. According to eyewitnesses, Rosa did so with such force that through the witnesses' half-opened car window a short

distance away, it sounded like "when you hit against a wall." Rosa continued to strike Glasgow forcefully to the head area, even as Glasgow attempted to flee the area, repeatedly hitting him back down as the victim attempted to stand and continuing to strike him as he later attempted to crawl away. Rosa also followed Glasgow as he finally broke free and made it to a nearby fence, continuing to beat him even as he again fell to the ground and as he became obviously disabled. Witnesses additionally testified that Rosa continued to beat Glasgow to the ground each time he attempted to flee, and delivered at least three to four more blows after the victim was on the ground doing nothing and eventually not moving. As Rosa beat Glasgow with the stick, Ramos beat him first with the machete and then, as he lay on the ground, also kicked him all about the body.

Ramos' testimony also confirmed the brutality of the beating, noting that as Glasgow dropped to his knees, his blood was "failing" all over Ramos. Ramos further testified that at some point during the beating he urged Rosa to walk away. Rosa, along with his cohort, then drove away from the area and parked in a nearby recreational park, leaving Glasgow lying on the ground and without seeking medical attention for him.

Dr. William Fogarty, the forensic pathologist who conducted an autopsy on Glasgow, testified Glasgow suffered extensive trauma to the head, massive skull fracture, a broken arm, and other injuries consistent with having suffered "extremely forceful blows to the head" and body.

This evidence, establishing a prolonged and particularly brutal beating concentrated on the head of the victim with a 2x4 board, was sufficient to support the jury's finding that Rosa had a deliberate design to kill Glasgow. *See Charles*, 72 F.3d at 410 (finding evidence sufficient to show premeditation where the appellant rushed the unarmed victim and stabbed him repeatedly with a knife to the chest); *Roldan*, 612 F.2d 775, 16 V.I. 683 (extent and number of wounds on the victim, evidence that victim was unarmed, and evidence of animus between victim and assailant, supported a finding of premeditation). We accordingly affirm.